## FRED L. STEVENS v. BESSIE PEARSON.[1]

July 20, 1917.

Nos. 20,432—(189).

**Bills and notes — fraud — notice of fraud to indorsee — evidence.**

Defendant gave to the Donald-Richard Company an order in writing for certain goods and at the same time signed a promissory note at the bottom of the order, detachable from the order by an indistinct perforation. It is virtually conceded that the note was procured by fraud. Plaintiff is an indorsee of the note. There is evidence sufficient to sustain a finding that plaintiff was chargeable with notice of the fraud and that defendant was not negligent in signing the note.

[1]Reported in 163 N. W. 769.

Action in the district court for Ramsey county to recover $100 upon a promissory note. In her answer defendant alleged that the salesman of Donald-Richard Company specifically stated that defendant would not have to pay for any goods unless sold, and relying on such representation defendant agreed that the goods might be placed in her store to be sold and paid for according to such agreement. She denied that she ever signed any promissory note whatsover and if her signature appeared upon the note it was obtained by fraud and trickery, and she never intended to sign any note; that the note was absolutely without consideration and void. She also alleged that plaintiff was not a bona fide purchaser of the paper. The case was tried before Hanft, J., who at the close of the testimony denied motions for directed verdicts, and a jury which returned a verdict in favor of defendant. Plaintiff's motion for judgment notwithstanding the verdict or for a new trial was denied. From the judgment entered pursuant to the order for judgment, plaintiff appealed. Affirmed.

*Keller & Loomis,* for appellant.

*John A. Pearson,* for respondent.

HALLAM, J.

Plaintiff brings this action as indorsee of a "detached" note given by defendant to the Donald-Richard Company. The note was dated July 27, 1915, was payable in instalments of $25 each in 4, 6, 8 and 10 months after date, and was indorsed over to plaintiff under date of October 13, 1915. Defendant contends that the note was obtained by fraud of one Hussey, the agent of the Donald-Richard Company, and it is conceded that if Hussey "made the representations that defendant claims were made to her, * * * then he practiced fraud upon her" and defendant "would not be liable to the Donald-Richard Company." That he did make the representations claimed by defendant is not denied.

This leaves only the question whether, under the negotiable instrument law, plaintiff has a better right of recovery than his transferror.

Fraud, in procurement of a signature to a promissory note, may consist of a trick or artifice by which a person is induced to sign the note without knowledge of the fact that it is a note, as where the paper is folded in such manner as to conceal its true nature. A note procured by fraud of this

character is not a contract at all, for there is no real assent on the part of the signer and it is wholly void and acquires no vitality, even in the hands of an innocent purchaser for value, unless the signer is guilty of some negligence, and in such event the liability to the innocent purchaser is predicated on negligence or estoppel and not on original assent. This is common law doctrine. G. S. 1913, § 6015, embodies this doctrine and perhaps enlarges it.

On the other hand, fraud may consist of misrepresentation which induces a real assent to the note, so that the party understands that he is signing just the contract that he does sign. A note obtained by fraud of this character has some vitality. There has been a meeting of the minds. The note is subject to the defense of fraud, but it is voidable only. In the hands of a bona fide holder for value the defense of fraud is not available. In an action on a note so procured, the question of negligence is not an element.

The court instructed the jury in substance, that section 6015 of the statute applied to this case, that, though defendant proved the fraud alleged, still if she was negligent in signing this paper, she had no defense against plaintiff, and then also instructed them that in no event was the defense of fraud available if plaintiff took the paper without notice or knowledge of the fraud.

This was perhaps a more favorable instruction than plaintiff was entitled to. It was if the evidence brought the case within the statute, for in such case, in the absence of negligence of the signer, the bona fides of the holder does not avail him. But this fact is not of great importance on this appeal, for, whatever may be said of the character of the fraud in this case, we are of the opinion that the evidence is sufficient to sustain a finding that plaintiff was chargeable with notice of the fraud and that defendant was not negligent.

The fraud charged was that Hussey induced defendant, who is a milliner conducting a small store, to order a line of toilet articles with the understanding that she was to pay for them only as sold, and if they did not sell or were not satisfactory, the company would take them back, and that Hussey induced defendant to sign what was apparently only an' order, but which in fact was an order with a note at the bottom with the paper perforated in such a way that the note could be detached.

It would be uncharitable to Hussey to charge the fraud wholly or even mainly to him. The whole framework of the document presented to defendant to sign was manifestly designed to enable agents to perpetrate the very fraud which Hussey in fact committed. The contract is long, on a large yellow sheet, and in fine print. Conspicuous at the start is this: "Special Agreement" of the seller: "We hereby agree to buy back at the purchase price all of the goods in this order remaining on hand at the termination of this agreement, if purchaser so desires." The time of termination of the agreement is not fixed. Hussey paraphrased this language but very little. The document is on its face designated an "order" for goods subject to "approval" of the seller. It fixes the terms of payment at 4, 6, 8 and 10 months and gives "privilege of cash discount" of 6 per cent on maturity of first payment. It is at the bottom of this that the instrument in form a promissory note is found. It is part of the sheet on which the order is printed and is separated from it by means of an indistinct perforation. On casual inspection it might look more like a continuation of the contract and a specification of the terms of payment under it, than a promissory note. Just above the "perforation" in fine print is the language "the attached note is tendered in settlement of this order and the company is authorized to detach same when this order is approved and shipped." The places intended for signature are such as to confuse. Defendant's name appears twice at the foot of the order, once written by herself, once by another, as well as at the bottom of the note.

If the whole of the yellow sheet is read closely it will be seen that the detachable portion is a promissory note, but it will be seen also that the note is out of harmony with the rest of the "order," so much so that one who had made the agreement would hardly give such a note except by inadvertence, and so much so that if this action had been brought by the payee, the defense that defendant had not sold the articles and desired to return them, would be perfectly available. The value of the note is accordingly largely in its detachment and transfer. The form of the document is well calculated to aid a salesman in securing from a customer a promissory note which he does not consciously give. In fact, it is not easy to see any purpose in incorporating this detachable note into the contract, except a purpose to deceive.

Plaintiff was a lawyer of many years' experience. He had taken thousands of dollars worth of these notes before. He knew they were detached from contracts. The taking of these notes was regular business with him, and, as they were collected, the proceeds were deposited in a special fund and this fund he used to take over more notes. He left the notes in the hands of the company's attorney for collection. There had been a considerable number of suits. The company paid all expense of collection and of the litigation incident to it.

Fraud in the inception of the note having been proved, it rested with the plaintiff to prove that he was a purchaser in good faith and for value. G. S. 1913, § 5871; Bank of Montreal v. Beecher, 133 Minn. 81, 157 N. W. 1070. We think the evidence presents facts abundantly sufficient to put plaintiff on inquiry and to charge him with notice of the fraud perpetrated on defendant.

As to the alleged negligence of defendant in signing her name to this note, we need only say that we think the average intelligent milliner of small business experience, with this document before her, complicated and contradictory in its terms, would find difficulty in understanding its legal effect and might easily be led into signing her name, as defendant did, without realizing that she was putting afloat a negotiable promissory note. The books abound in cases where courts have relieved parties from the terms or provisions of contracts which by reason of fine print or other device are easily susceptible of being overlooked or not understood by the party bound by them. Insurance Co. v. Slaughter, 12 Wall. 404, 20 L. ed. 444; Blossom v. Dodd, 43 N. Y. 264, 3 Am. Rep. 701. Caution should be exercised in affording such relief, but we think the evidence in this case is such that the jury might find that defendant was not negligent in signing this note and that she was not bound by it.

Order affirmed.