STEVENS *v.* VENEMA.

1. BILLS AND NOTES—FRAUD—NOTICE—EVIDENCE—SUFFICIENCY.
   In a suit upon a promissory note by the indorsee, evidence
   *held,* sufficient to put plaintiff upon inquiry and charge
   him with notice of the fraud perpetrated upon defendant.

2. SAME—PRESUMPTIVE FRAUD—NOTICE—BURDEN OF PROOF.
   The procuring of defendant's signature to a promissory note
   made a part of an elaborate and ingeniously enticing
   "order" for merchandise prepared on a printed form so
   as to be signed in several places was presumptively fraud-
   ulent, and, when so shown, shifts the burden of proof to
   the party claiming under it chargeable with notice.

3. SAME—NEGOTIABLE INSTRUMENTS—CONDITIONAL CONTRACT—AL-
   TERATION.
   Where a conditional order for merchandise was so pre-
   pared that a part, when detached, became a promissory
   note, detaching such negotiable part of the instrument
   operated as an alteration of the contract and avoided the
   same in the hands of the original payee or of a party
   charged with notice.

Error to Kent; Barton, J., presiding. Submitted
January 23, 1918. (Docket No. 167.) Decided July
18, 1918.

Assumpsit in justice's court by Fred L. Stevens
against Herman Venema on an alleged promissory
note. There was judgment for defendant, and plain-
tiff appealed to the circuit court. Judgment for de-
fendant on a directed verdict. Plaintiff brings error.
Affirmed.

*William J. Gillett,* for appellant.

*Wicks, Fuller & Starr,* for appellee.

STEERE, J. This case was begun and first tried in a
justice's court of Kent county where defendant had

verdict and judgment, from which plaintiff took an appeal to the circuit court. The justice's return shows that plaintiff declared orally upon all the common counts in assumpsit and especially upon a certain promissory note. Defendant filed a written plea with notice of special defense and affidavit denying. execution of the alleged note, the special defenses of which notice was given being as follows:

"1st. Defendant denies that he signed, executed or delivered the alleged promissory note on which the claim herein is based, or that he signed, executed or delivered any promissory note on which the claim herein is based, or that he signed, executed or delivered any promissory note whatever.

"2d. That the paper which defendant actually did sign has been materially altered by the Donald-Richard Company or by plaintiff or by some other persons, and that it is therefore void.

"3d. That defendant was induced to sign the paper which he did sign through the fraud and misrepresentation of an agent of the Donald-Richard Company of Iowa City, Iowa.

"4th. That plaintiff is not a *bona fide* holder for value of the alleged note, and that he had notice and knowledge of all the circumstances hereinbefore set forth before the said plaintiff took the said alleged note.

"5th. That the paper signed by this defendant was a contract and not a negotiable instrument and that plaintiff does not claim to hold the same by assignment; wherefore plaintiff has not shown any right to maintain any action on said contract."

Upon trial of the case in circuit court defendant introduced no testimony, but at conclusion of plaintiff's testimony moved for a directed verdict in his favor, which was granted and judgment rendered thereon.

Plaintiff's assignments of error are directed to the rulings of the court upon questions of law which center to and resulted in the charge directing a verdict for defendant. At conclusion of the brief charge di-

recting a verdict because "no question of fact will be left to you for your consideration" the court said, in answer to inquiry by plaintiff's counsel if the stenographer had taken down the motion:

"Oh, yes, he took it in detail and I directed the verdict upon all the grounds he presented."

The grounds presented ran through the argument of counsel, the material points made and grounds urged for a directed verdict being that there was no competent proof of execution of the note in question by defendant, that the note claimed to have been executed by him and denied under oath, if signed at all, was a part of a conditional order or agreement and its detachment for separate use as negotiable paper constituted a plain alteration of the agreement, rendering it void as a promissory note. The detached note reads as follows:

"IOWA CITY, IOWA, March 29, 1916.
"For value received, the undersigned promises to pay at Iowa City, Iowa, to the order of Donald-Richard Company, one hundred and forty-eight dollars as follows: $37 three months after date, $37 five months after date, $37 seven months after date, $37 nine months after date. Nonpayment of any installment for more than thirty days after maturity renders remaining installments due at holder's option.
(Signed) "HERMAN VENEMA,
"P. O. Grand Rapids, Michigan."
Endorsed, "May 31, 1916. Donald-Richard Company, M. H. Taylor."

Defendant was engaged in the grocery business at Grand Rapids, Mich., and on March 29, 1916, a salesman of the Donald-Richard Company of Iowa City, Iowa, procured from him a so-called "order" for some of its goods, consisting of perfumery and toilet articles, to which plaintiff claims was attached the note in question which he also signed, and which he denies.

The lengthy "order," or "paper," which defendant

admitted signing is of the same character and apparently, so far as described and quoted from, of like form as that used by the Donald-Richard Company in *Stevens* v. *Pearson,* 138 Minn. 72 (163 N. W. 769), of which the court there said:

"The whole framework of the document presented to defendant to sign was manifestly designed to enable agents to perpetrate the very fraud which Hussey in fact committed. The contract is long, on a yellow sheet and in fine print. Conspicuous at the start is this 'special agreement' of the seller: 'We hereby agree to buy back at the purchase price all of the goods in this order remaining on hand at the termination of this agreement, if purchaser so desires,' * * * Just above the 'perforation' in fine print is the language 'the attached note is tendered in settlement of this order and the company is authorized to detach same when this order is approved and shipped.' The places intended for signatures are such as to confuse."

We are not favored with the original document in this case, but aside from the physical features of color of paper and size of type, that description is applicable. This "order" is headed: "Donald-Richard Co., incorporated, Chicago, Ill., General Office and Laboratory at Iowa City, Iowa, and Winnipeg, Canada. Special agreement." The subject is introduced by the following attractive provision:

"We hereby agree to buy back at the purchase price all of the goods in this order remaining on hand at the termination of this agreement, if the purchaser so desires, and if net profits are less than 50 per cent. each year for two years, will pay the difference in cash, provided purchaser has kept the goods tastefully displayed for sale in his store, used the advertising system as provided on the reverse side hereof, made payments as agreed and used reasonable diligence in promoting the sale of the goods."

A variety of provisions follow, such as warranty of the goods as to quality, provision for exchange of

goods, notice that its agents are "soliciting salesmen," whose orders are subject to "approval or disapproval at laboratory," terms of discount, etc. A sentence provides that "privileges herein granted are conditional on purchaser complying with all the conditions of this order." Another sentence states that,

"The attached note is tendered in settlement of this order and the company is authorized to detach same when this order is approved and shipped."

Above this sentence appears

"Owner of store, Herman Venema. Salesman, H. E. Collins. Order signed by Herman Venema."

A provision appears written across the face of the paper that

"The company will send its bond to Kent State Bank of Grand Rapids, Michigan, in the sum of this order to protect the purchaser in all of the conditions of this sale. Ship with this order $9 worth of free goods to apply on freight charge. Ship with this order one-half gross empty bottles free."

On June 28, 1916, defendant wrote the Donald-Richard Company:

"Having tried my best to sell some of your goods and failing to do so, I wish to return the goods as your salesman said I could when I bought the goods. I think I must have sold about $1.50 or $2 worth of these goods. Am very much disappointed. Please let me know how to send them or if I can leave them in Grand Rapids, Mich., some place."

On June 30, 1916, the company replied reminding him the "terms and conditions" under which the goods were shipped to him were "a very fair and just purchasing method," that "your order provides that you are to send in a list of names for advertising to be sent out direct to us. This you have not done," etc., and concluding:

"We were obliged to discount your note some time

ago as we have to raise cash funds. It is not now our property and we are not in a position to comply with your request to take the goods off your hands at this time."

The order in this record contains no provision relative to sending a list of names for advertising, although it may have been embodied in the "advertising system as provided on the reverse side hereof," which we are not furnished.

On October 31, 1916, this action was begun. The salesman who procured the order was not produced. The only witness called was defendant, for cross-examination under the statute; shown the order (Exhibit A) he replied "I have seen the order and it is my signature." Shown the note (Exhibit B) in question, he replied "That is not my signature, * * * I will swear that I never signed a note to my knowledge." Told to compare that signature with the one on the other paper he said "It looks like it." Cross-examined further he denied knowing Exhibit A was attached to Exhibit B when he signed in the three places, and said in part:

"I signed my name in three places on the order but did not see that there was anything attached to it * * * I will swear I did not sign a note. * .* * That is not my signature. * * * I received all the goods mentioned in the order and still have them."

No other witnesses were sworn. His counsel then produced and offered in evidence the depositions of plaintiff, Fred L. Stevens, and M. H. Taylor, both of Iowa City, Iowa, taken on notice before a justice of the peace of that city. Neither knew anything of what occurred when the order was taken in Grand Rapids or could identify Exhibits A and B back of their receipt by mail in Iowa City. As their depositions were read objections were made to their identification and the admission of those papers in evidence on their

testimony. M. H. Taylor, who figures prominently in the records of *Harrison* v. *Grier,* 198 Mich. 672, cited in *Loveland* v. *Bump,* 198 Mich. 564, testified that he was assistant manager of the Donald-Richard Company and identified Exhibits A (the note) and B (the order) as having been received through the mail from one of its salesmen, that Exhibit A was attached to Exhibit B when received and he accepted the order; that he detached the note, indorsed it for the company and delivered it to plaintiff, on May 31, 1916, who paid 90 per cent. of the face value for it. Plaintiff testified that he was a practicing attorney, interested in banking and investments, had lived in Iowa City 20 years, and had known the Donald-Richard Company for 5 years or more; that he had taken many thousand dollars of its paper since February, 1913, knew that there was some litigation over collection of the paper it had taken from its various customers and had given depositions similar to those he was then giving 20 or 25 times since February, 1916; that he bought the note in question which was delivered to him by Taylor on May 31, 1916, prior to which time he knew of no defense or claim defendant might have against the Donald-Richard Company, and he had exercised his option in declaring all remaining installments due, that the note bore evidence of having been detached from some other paper, but Mr. Taylor did not show him the contract between defendant and the company and did not know whether the latter had fulfilled on its part. In *Stevens* v. *Pearson, supra,* decided by the supreme court of Minnesota, July 20, 1917, in which plaintiff's depositions are stated to have been taken October 3, 1916, about a month before this suit was begun, his knowledge of and relations with the Donald-Richard Company are taken note of and discussed. We are well satisfied in this case, as there held, that "the evidence presents facts abundantly to

put plaintiff upon inquiry and charge him with notice of the fraud perpetrated upon defendant." The procuring of defendant's signature to a promissory note made a part of an elaborate and ingeniously enticing so-called "order" for merchandise, prepared on a printed form so as to be signed in several places, was presumptively deceptive and fraudulent, and when so shown shifts the burden of proof to the party claiming under it chargeable with notice. The natural inference to be drawn from incorporating a detachable promissory note in such an instrument in a transaction of this nature is a purpose to deceive.

Beyond this, the order, or "special agreement," was a conditional order. The note though out of harmony was made a part of it. When detached it took an independent character and increased value as negotiable paper, and as a whole changed the contract or conditional agreement of which the party who prepared and used that form of order made it a part. This device for procuring negotiable paper by cunningly inserting it as an obscured part of an order for merchandise, but easily detached, is not new. In the early case of *Wait* v. *Pomeroy*, 20 Mich. 425, it was held that the destruction of a memorandum written under and qualifying the obligations of a promissory note invalidated it. In the recent case of *Toledo Scale Co.* v. *Gogo*, 186 Mich. 442, where the subject is fully discussed in an opinion by Justice KUHN, it was held that, where a conditional contract for the sale of a set of computing scales was so drafted that a portion of the instrument signed could readily be detached from the remainder, and, standing alone, would constitute a promissory note, detaching such negotiable part of the instrument operated as an alteration of the contract and avoided the same in the hands of the original payee, which would be equally true if in the hands of a party charged with knowledge.

To sustain the validity of this detached note, dependence is placed upon the provision in the order "that the company is authorized to detach the same when this order is approved and shipped." This sentence appears in the order just above the perforation for detaching the note and below the signature in the order. Such expedient only emphasizes the sinister purpose of the combination. In *Toledo Scale Co.* v. *Gogo, supra*, it appears from the original record that an unsuccessful attempt was made to validate the note for detachment by two provisions, in separate places, one stating "you are authorized to date abovementioned note at such time as you may elect to insert such date either prior to or after the execution of such note," and the other, nearer the close of the instrument, that "The signing or delivering of installment note shall not be deemed or considered a payment or waiver of any term, provision or condition of this contract."

We regard the decision in that case as well in point and controlling here.

The judgment is affirmed.

OSTRANDER, C. J., and BIRD, MOORE, BROOKE, FELLOWS, STONE, and KUHN, JJ., concurred.