No. 28,555.

F. L. STEVENS, *Appellant*, v. GEORGE COLE and WALTER C. NEIL, doing business as COLE & NEIL DRUG STORE, *Appellees*.

(275 Pac. 167.)

Opinion filed March 9, 1929.

*J. W. Smyth, B. F. Alford* and *W. H. Jones*, all of Wichita, for the appellant.

*Thomas C. Wilson, Henry Lampl* and *Rupert Teall*, all of Wichita, for the appellees.

The opinion of the court was delivered by

HOPKINS, J.: The action was one to recover on certain promissory notes, the defense being that the notes were procured through fraud and misrepresentation. Defendants prevailed, and plaintiff appeals.

The facts are substantially these: The plaintiff is a lawyer and broker in commercial paper in Iowa City, Iowa. The Brenard Manufacturing Company, from whom plaintiff claimed to have purchased the notes, deals in radio appliances, and is located in Iowa City. The defendants operate a drug store in the west part of the business district of Wichita. On December 8, 1926, one Avery, representing the Brenard Manufacturing Company, called at the defendants' place of business about three or four o'clock in the afternoon. The defendant Neil only was there. Avery said that he had established an agency for the sale of his radios on the east side, was establishing one in the center of town and now desired to establish one on the west side; that the radios were to be handled upon a consignment basis and that no money need be put into the proposition by the defendants. Neil asked to see the contract. Avery said that he had left it on the east side where he had established an agency

and was unable to produce it. Defendant Cole then came in and Neil went to supper. Avery made practically the same representations and statements to Cole. Cole was busy waiting on trade and suggested to Avery that he be given until the following morning in which to make an answer to his proposition. Avery said that he wished to leave for Winfield early in the morning and that if Cole would agree to take the agency that evening he would pay the freight on the radios to Wichita. Avery produced his contract, which he had told Neil he did not have, and assumed to read portions of it to Cole while the latter was waiting on trade. Cole was prevented from reading the contract because of interruptions of customers and the willingness of Avery to read and explain it to him. Avery misread the proposition. As read by him it sounded good to Cole, who signed it. Avery then unfolded it and disclosed six additional places to sign. The places for signature appeared to be on notes. Cole suggested that he was being asked to sign notes. Avery stated that they were not notes and explained that the amount of each instrument corresponded with the prices of the radios; that the dates on the notes were blank; that each note was to be dated, marked "Paid" and returned to the signers as the corresponding radio was sold and the purchase price, minus commission, sent to the company, and that these instruments were to be given solely for the protection of the company in the event the firm became insolvent or suffered loss by fire. Upon these representations Cole signed in the places directed.

The contract and notes were made up on one paper and were separated by delicately perforated lines. Avery said the instrument was to be kept entire and each note detached as the corresponding radio was sold and returned to the defendants marked "Paid." On December 14, 1926, the defendants received a letter from the company, dated December 10, inclosing copy of the contract. The purported notes had been dated with the date of the contract and the words of one note, "one month after date" changed to "seven months after date." Upon inspection of the contract, the defendants found that instead of it being merely a consignment contract it was an order for goods for which they promised to pay. They immediately wired the Brenard Company, attempting to cancel the contract and saying not to ship the radios. The wire was confirmed by registered letter. Both were received by the company before shipment was made. The company nevertheless shipped the radios. When they

arrived the defendants refused to take them and had them shipped back to the company.

It was shown that the plaintiff had previously purchased from the same company considerable amounts of similar paper. He had experienced trouble in the collection of some such notes and his deposition had been taken in a number of cases. The notes in the instant case were claimed to have been purchased by him January 24, 1927. The plaintiff knew at the time he purchased them that they had been detached from the form of contract used by the company in their business of selling radios. A method of collection of such notes, in accordance with an agreement between the plaintiff and the Brenard Company was followed, whereby legal services and other expenses were borne by the company. A special fund was kept by the plaintiff in a bank with which to make purchases of Brenard company paper. Quantities of such notes were brought to the office of the plaintiff at regular intervals. He would go through the form of making a purchase and would write a check upon his special fund for the required amount. He would not again see the notes unless his deposition would be required as in the instant case. He paid no attention to their collection. That matter was attended to by an attorney in the employ of the Brenard company. This attorney had his office in the headquarters building of the Brenard company.

Trial was to the court, which found, among other things, that the original notes were procured by fraud and that the plaintiff was not a holder in due course. We are of the opinion that the evidence adduced, part of which has been noted, was abundantly sufficient to warrant the findings that the notes were procured by fraud and misrepresentation and that the plaintiff was not a holder in due course.

*Stevens v. Barnes*, 43 N. Dak. 483, 175 N. W. 709, 18 A. L. R. 10, is in some respects a similar "detached" note case, arising out of a transaction originating at Iowa City, in which the question of fraud was considered. The court said:

"Assuming the testimony of Mrs. Wrede [one of the defendants] as contained in the stipulation as binding under the stipulation upon the parties, we will examine the evidence which it is stipulated she would give, and determine therefrom if it proves or tends to prove actual fraud. Her evidence in this regard is wholly undisputed and must be accepted as true. According to her testimony as stipulated, Acker, the agent of the plaintiff, stated to this witness and her partner that said instruments, taken together, constituted an

order for goods, and did not constitute a note, but that the second proof of said instrument, now marked 'exhibit A,' which was attached to exhibit B was to represent merely the manner in which the goods or payment for the goods should mature.

"If those statements and representations were made by Acker, as the testimony of Mrs. Wrede as stipulated shows, such statements were, under the statute, false and fraudulent representations. Acker must have known that exhibit A which was attached to exhibit B was not merely to represent the manner or maturity of payment. He knew that exhibit A constituted a note; he knew that the instruments, taken together, did not constitute an order for goods only, but did constitute an order for goods plus a note. His representations were such, then, as to induce the defendants to believe that the instrument or instruments did not constitute a note, and that there was no note involved in the transaction; his conduct was such as was well fitted to deceive the defendants; his representations were of such character· as to amount to the suggestion of a fact of that which is not true. . . . In other words, he must have had full knowledge of the intent and purpose of the whole contract, both exhibits A and B, and, in view of the representations to which it is stipulated Mrs. Wrede would testify, he must have suppressed the true condition and intent and purpose of both exhibits A and B.

"It appears from the stipulation above set forth that prior to the execution of the instrument in suit, the Donald-Richards Company, through one of its agents, had sold to J. I. Rue, a merchant in Enderlin, North Dakota, goods, wares, and merchandise of the same nature and composition as the articles sold defendants.

"This evidence as stipulated supports the allegation of the answer which, in substance, avers that Acker, the agent of the Donald-Richards Company, represented to the defendants that said company sold goods to but one customer or firm in each city, and that defendants would have the exclusive sale of said line of goods in the city of Enderlin; that said representations were false, fraudulent, and untrue, and relied upon by the defendants; and that they were induced thereby to execute the order for said goods." (p. 489.)

In *Stevens v. Venema,* 202 Mich. 232, 168 N. W. 531, L. R. A. 1918F, 1145, the court said:

"Plaintiff testified that he was a practicing attorney interested in banking and investments, had lived in Iowa City twenty years, and had known the Donald-Richards Company for five years or more; that he had taken many thousand dollars of its paper since February, 1915; knew there was some litigation over collection of the paper it had taken from its various customers, and had given depositions similar to those he was then giving twenty or twenty-five times since February, 1915; that he bought the note in question, which was delivered to him by Taylor on May 31, 1916, prior to which time he knew of no defense or claim defendant might have against the Donald-Richards Company, and he had exercised his option in declaring all remaining installments due; that the note bore evidence of having been detached from some other paper, but Mr. Taylor did not show him the contract between defendant and the company, and did not know whether the latter had fulfilled on its part.

In *Stevens v. Pearson,* supra, decided by the supreme court of Minnesota, July 20, 1917, in which plaintiff's depositions are stated to have been taken October 3, 1916, about a month before this suit was begun, his knowledge of and relations with the Donald-Richards Company are taken note of and discussed. We are well satisfied in this case, as there held, that 'the evidence presents facts abundantly to put plaintiff on inquiry and charge him with notice of the fraud perpetrated upon defendant.'" (p. 533. See, also, *Stevens v. Keegan,* 114 Kan. 796, 220 Pac. 1050; *Manufacturing Co. v. Scranton,* 116 Kan. 93, 225 Pac. 731; *Stevens v. Pearson,* 138 Minn. 72, 163 N. W. 769; *Harrison v. Grier,* 198 Mich. 672, 165 N. W. 854; *Loveland v. Bump,* 198 Mich. 564, 165 N. W. 855; *Pratt v. Duncan,* 204 Mich. 632, 171 N. W. 337.)

What has been said covers plaintiff's various assignments of error, so that additional comment is unnecessary.

The judgment is affirmed.