## Staunton.

A. K. MANN v. EVA OSBORNE, C. D. OSBORNE AND OTHERS.

September 19, 1929.

Absent, West, J.

The opinion states the case.

*Thomas C. Phillips*, for the appellant.

*Hutton & Hutton, Jno. T. DeHart*, and *J. Harry Price*, for the appellees.

CAMPBELL, J., delivered the opinion of the court.

This is an appeal from a decree of the Circuit Court of Washington county, rendered on the 17th day of February, 1928. The bill was filed by the appellant against the appellees to obtain a judgment against C. D. Osborne in the principal sum of $500.00, evidenced by a negotiable note executed by Osborne, endorsed by one H. N. Broyles, and assigned by Broyles to appellant, who claims to be a holder thereof in due course; and to set aside as fraudulent and voluntary a deed of conveyance from C. D. Osborne to Eva Osborne, his wife, and subject the land to the payment of the judgment.

The Fidelity Trust Company and M. D. Arnold were made parties defendant to the bill, due to the fact that the trust company held a deed of trust on the land conveyed by C. D. Osborne to his wife, but as this lien is recognized as paramount to the claim of appellant, the trust company is not interested in the result of this litigation.

Process was issued and the sheriff made a return showing personal service upon C. D. and Eva Osborne. The bill was duly matured at rules and when the suit was reached upon the submission docket, the bill was taken for confessed as to C. D. and Eva Osborne, judgment was decreed against C. D. Osborne in the principal sum of $500.00, and the deed from Osborne to his wife was declared null and void. A report of liens was ordered and upon the coming in of the report showing the land would not rent for a sum sufficient to discharge the indebtedness in five years, a decree of sale was entered. After the sale was ordered, but before it was actually held, defendants, C. D. and Eva Osborne, gave notice, on May 26, 1927, that they would move the court for leave for the officer to amend his return on the original process, which leave was sub-

sequently granted and the return amended so as to show that the officer had in fact delivered a copy of the subpoena to C. D. Osborne in person, in Bristol, Washington county, Virginia, and has also delivered a copy to him for his wife, both of whom at that time resided in Bristol, Tennessee, so that it appeared that no legal process had been actually served on Eva Osborne. Thereupon, the court, by decree entered on June 3, 1927, set aside all previous decrees in the cause and declared them null and void.

Defendants, C. D. Osborne and Eva Osborne, shortly thereafter filed their answer and entered an appearance, and by their answers made two defenses, viz.:

(1) C. D. Osborne contended that he had paid the note in question in full to H. N. Broyles, the original payee, and exhibited a writing which he alleged was a receipt therefor.

(2) Both defendants contended that Eva Osborne had loaned her husband, C. D. Osborne, $5,500.00 at one time, and $1,000.00 at another, and had assumed the payment of certain liens upon the property, and that the conveyance of this land to her was in consideration of the same, and that the deed in question was not a voluntary one, and not made with the intention to defraud creditors, and therefore not subject to the payment of complainant's claim.

Depositions were taken, and upon a hearing of the case upon the merits, the trial court entered the following decree:

"This cause was heretofore heard on the bill and exhibits, the answer of C. D Osborne, the answer of Eva Osborne, the answer of the Fidelity Trust Company, the general replications to said answer, the depositions of witnesses for both sides, the former decree entered, and upon argument of counsel, and the court

having now maturely considered the same; and it appearing that H. N. Broyles transferred the note in question to complainant 'in breach of faith,' if he was not in fact a partner of complainant, and the close friendship and course of dealing between Mann and Broyles and the long delay until Broyles was insolvent, show that Mann is more at fault in the matter than Osborne and should suffer the loss, and the court is of opinion that complainant is not entitled to assert the alleged debt against the land in question and that his bill should be dismissed at his costs, and doth so decree."

It is assigned as error that the court erred in setting aside that part of the decree entered on January 25, 1927, which adjudicated the rights of complainant and C. D. Osborne, for the reason that Osborne was personally served with process and the decrees as to him had become final. Even though it be conceded that the decree relied upon was an appealable decree, the cause was still pending, and under the provisions of Code 1919, section 6122, appellee, C. D. Osborne, could file his answer with the permission of the court, setting up his defense to the note held by appellant.

Prior to the revision of the Code in 1919, section 3275 of the Code of 1887 was in effect. Section 3275 limited the time for filing an answer by providing that: "At any time before final decree, a defendant may be allowed to file his answer."

In *Welsh* v. *Solenberger*, 85 Va. 444, 8 S. E. 91, the statute was construed and the word "may" was held to be imperative, and it means "shall." No such language, however, appears in section 6122 of the Code of 1919. There it is provided: "A defendant in equity upon whom process has been executed shall file his answer or other defense in the court or in the clerk's

office of the court in which the suit or proceeding is pending within six months from the date of the service * * *."

The answer of Osborne was filed at the first August rules, 1927, and within six months from the entry of the decree relied upon. In his answer Osborne set up the defense that the note sued upon had been fully paid, and in support of this allegation testified in substance that on or about the date of the execution of the note, he sold to Broyles certain personal property, among which was a hay-baler; that he had purchased the baler from a machinery house in Bristol, Virginia, which retained a lien thereon to secure the purchase price of $500.00 that, because of the lien, Broyles insisted that he execute the note in question to protect him (Broyles) in the purchase of the baler; that the debt to the machinery house had been fully discharged; that when he demanded of Broyles the note, Broyles claimed that it had been lost; that after repeated efforts to secure the note, he compelled Broyles to execute the following receipt:

"November 22, 1923. C. D. Osborne paid H. N. Broyles note dated August 25, 1923, for $500.00 that he was to pay Mr. Copenhaver on hay-baler in trade on Baylor.

"(Signed) H. N. BROYLES."

While it is true that Broyles contradicted the statement of Osborne and claimed that the note sued upon was given in payment for a deficiency in land purchased from Osborne, he was unable to give a lucid account of the execution of the receipt—in fact, denied the same. This evidence is of such an evasive character that the trial court was well warranted in disregarding it.

In his answer, Osborne also set up the defense

that appellant was not a holder in due course of the note sued upon. Upon his examination as a witness he testified that the note was a forgery. With this latter contention we are unable to agree. The note in question is headed Bristol, Virginia, dated August 25, 1923, and payable sixty days after date. In his examination in chief, Osborne was interrogated in regard to the note. His testimony is as follows:

"Q. Now, Mr. Osborne, Mr. Mann says that he holds a note of yours dated the 25th day of August, 1923, and due in sixty days after date for $500.00. Did you execute that note?

"A. Yes, sir.

"Q. Why did you execute it?

"A. I bought a hay-baler of Copenhaver, of the firm of Hamilton, Bacon, Hamilton Company, and I owed $500.00 yet on the baler and executed Broyles a note for $500.00 August 25, 1923, for sixty days, and he was to keep this note at his office and when I paid the Hamilton, Bacon, Hamilton Company that he was to deliver me this note.

"Q. Did you pay Hamilton, Bacon, Hamilton Company the $500.00?

"A. Yes, sir; I paid Hamilton, Bacon, Hamilton Company the $500.00.

"Q. Is this a receipt for it?

"A. Yes, sir."

While we are of opinion that Osborne did execute the note sued upon, it conclusively appears that Broyles transferred the note to appellant, as stated by the trial court in its decree, "in breach of faith." This being true, the burden was upon appellant to show that he was a *bona fide* holder in due course. *Atkinson* v. *Neblett*, 144 Va. 220, 132 S. E. 326.

The holding of the trial court is to the effect

that Mann was engaged as a partner in business with Broyles, and by reason of the "close friendship and course of dealing between Mann and Broyles and the long delay until Broyles was insolvent show that Mann is more at fault in the matter than Osborne and should suffer the loss * * *." The equitable doctrine that where the equities are equal he who is most at fault should suffer the loss is not involved in the instant case. The sole question in this connection is: Was Mann a *bona fide* holder for value? Business relationship is not a badge of fraud; neither is close friendship. To rebut the legal presumption that men are honest in their dealings one with another it must appear that the transaction is based on actual fraud, or that such facts and circumstances are shown as lead a candid mind to the conclusion that the transaction originated in bad faith and culminated in legal fraud. The record shows that appellant occupies a position of trust with the Industrial Commission of Virginia; no attack is made on his integrity or veracity. His account of the transaction between Broyles and himself is lucid and straightforward. His evidence upon this point is as follows:

"Q. I hand you herewith a note dated August 25, 1923, for the principal sum of $500.00 signed by C. D. Osborne, and payable sixty days after date to the order of H. N. Broyles, and by him endorsed; please state if this note now belongs to you and is an existing obligation of said C. D. Osborne, and the circumstances under which you acquired this note.

"A. When I resided in Bristol I had several business transactions with one H. N. Broyles of that town, and in the course of one transaction Mr. Broyles became indebted to me and gave me a note evidencing the same, and also assigned and delivered to me a note

similar to this note, in all things, except that it was of an earlier date, namely about September 23, 1922, and due on January 23, 1923, agreeing that it should be collateral security in my favor for Mr. Broyles' own note. The principal obligation of Mr. Broyles was never paid and in an attempt to collect the same I secured judgment, had execution issued, upon which return was made by the officer of *nulla bona.* I also called on Mr. Osborne through my attorney, Mr. H. N. Haynes, Jr., of Bristol, Virginia, to pay his note which I held as collateral. He made various excuses as to his inability to do so just then, but never denied his liability on the note, and in fact I understand he paid the interest that was due on his note to Mr. Broyles, Mr. Broyles keeping the interest paid upon his note to me until suit was brought, and renewed the same from time to time, so that this note is now a renewal of the original note which was delivered to me by Mr. Broyles. I have never collected any of the principal sum due by Mr. Broyles to me, and am now entitled to have this note paid in full.

"Q. Did you know of any agreement whereby Mr. Osborne paid part of this note to Mr. Broyles by the sale of a hay-baler to him, or in any other manner?

"A. No.

"Q. When did you first hear that Mr. Osborne claimed that he had paid this note to Mr. Broyles, either in whole or in part?

"A. On or about May 26, 1926.

"Q. At the time you took this note as collateral security for the Broyles note, did you rely on it as being a *bona fide* obligation, and also rely upon the fact that Mr. Osborne was the owner of real estate and a man of substantial means?

"A. Yes."

There is no direct contradiction of appellant's testimony.

In support of its conclusion that appellant delayed unduly the prosecution of his suit against Osborne, the court cites *Duerson's Admr.* v. *Alsop*, 27 Gratt. (68 Va.) 229. In that case the facts are fully set forth thus: "The note which is the subject of the present controversy matured in June, 1862. When or how the appellee obtained possession of it, does not appear. He does not state what consideration he paid for it, or indeed that he paid any consideration at all; although his long delay rendered some explanation of the kind peculiarly proper and even necessary. The only statement bearing upon this point contained in the bill is, that John J. Chew made the note on the 11th of December, 1861, payable to the order of George F. Chew and Robert C. Duerson; and that afterwards the said Chew and Duerson endorsed the same to the appellee. It is not very clear from this, whether the appellee obtained the note from the endorsers or from the maker. The fair implication is, that it was the former, and yet it is manifest from the face of the note itself, it was accommodation paper for the benefit of the maker. The note, although payable at the bank in Fredericksburg, was never placed in that bank; and, so far as this record discloses, has never been seen by anyone, or even heard of, since the date of its execution, until very shortly before this suit was brought, in December, 1870. Duerson, one of the endorsers, against whose estate this claim is asserted, died in 1863. George F. Chew, it seems, is also dead; when his death occurred does not appear; it was certainly before the institution of this suit. John J. Chew, the maker, it would seem, even after the close of the war, was possessed of sufficient property to pay the note. He

died in the year 1870, utterly insolvent. Notwithstanding all the parties lived in or near Fredericksburg, notwithstanding the death of maker and indorsers, and the failure of threatened distribution of their estates, the appellee, from 1862 to 1870, inclusive, so far as the record informs us, never disclosed to anyone that he was the owner of this large debt. It was not until the death of every person who could throw any light upon the transaction that he brings forward the note, and claims to recover against one of the endorsers. Very curious to say, these circumstances seem to have attracted but little attention in the court below. They are alluded to in the answer of Duerson's administrator, not so much to throw discredit upon the title of the appellee, as to fix upon him the imputation of gross laches in the assertion of his demand to the manifest prejudice of the endorsers. The appellee having brought his suit within the time allowed by the several statutes passed since the war, I do not perceive how he can be barred upon the ground of any supposed laches. But his long delay in connection with the other circumstances, already alluded to, removes the presumption arising from the mere possession of the note, and makes it incumbent upon him to show that he paid consideration for it, or at least facts and circumstances, from which it may be inferred that he has paid such consideration."

It is to be observed that while the court held that long delay in the assertion of a right "removes the presumption arising from the mere possession of the note, and makes it incumbent upon him (the holder) to show that he paid consideration for it," it also held that the suit was brought within the statutory period, and that "mere delay" is not a basis upon which to predicate a denial of recovery.

In the instant suit, no such long period of time had elapsed. Prior to the institution of this suit, judgment had been obtained and an effort made to collect the primary indebtedness from Broyles. This being the situation, it cannot be said that appellant was guilty of laches.

While we are of opinion that no error was committed by the lower court in setting aside the decree of January 25, 1927, we are further of opinion that appellant has successfully borne the burden of showing that he was a holder in due course of the note, and that the lower court erred in refusing to enter judgment against C. D. Osborne. See *Battle* v. *Rock*, 144 Va. 1, 131 S. E. 344.

The second assignment of error upon which reliance is placed is that with respect to the refusal of the court to set aside the deed from C. D. Osborne to Eva Osborne and subject the land conveyed to the payment of appellant's debt.

On June 7, 1919, C. D. Osborne purchased from W. J. Legard a tract of land containing 160 acres, more or less, for the sum of $20,000.00, payable one-third cash in hand and the balance in one, two and three years from date of deed, evidenced by negotiable notes executed by C. D. and Eva Osborne. The evidence discloses that the cash payment was furnished by the wife from the proceeds of land sold by her, situated in the State of North Carolina. On March 4, 1925, Osborne and wife executed a deed of trust upon the land to Mr. Arnold, trustee, to secure the sum of $4,500.00, evidenced by a promissory note and held by the Fidelity Trust Company. By deed dated the 23rd day of March, 1925, C. D. Osborne conveyed 115 acres of the land in controversy to his wife, Eva Osborne, in consideration of the assumption by her of two

deeds of trust, in favor of the trust company, and the second, amounting to $1,191.00, in favor of H. G. Peters, trustee.

Appellant does not attack the conveyance on the ground of inadequacy of price, and in view of the fact that Eva Osborne advanced the cash payment, even if such an attack were made, it would prove unavailing. At the time of the conveyance C. D. Osborne was solvent and only owed the note held by appellant. This sum, as we have seen, is due appellant by reason of his being a holder for value of the note and not by reason of any indebtedness existing between Osborne and Broyles.

The general rule is that where a husband is insolvent, transactions between husband and wife are viewed with suspicion, and the burden is upon them to satisfactorily explain the transaction. This burden in our opinion, appellees have successfully borne. The record demonstrates that the conveyance from the husband to the wife was for a valuable consideration and is without any taint of fraud.

There is no merit in this assignment of error.

For the reasons stated, that part of the final decree which denies to appellant a recovery on the note sued upon will be reversed: in all other respects it will be affirmed, and this court will proceed to enter judgment in favor of A. K. Mann in the principal sum of $500.00 with six per cent interest thereon from the 25th day of August, 1923, together with ten per cent attorney's fee, as provided for in said note. Appellees, C. D. Osborne and Eva Osborne, substantially prevailing, they will be awarded all court costs incurred by them in this controversy.

*Reversed in part; affirmed in part.*