# Staunton

F. L. STEVENS v. CLINTWOOD DRUG COMPANY.

September 12, 1930.

Absent, Holt and Browning, JJ.

*French & Rush,* for the plaintiff in error.

*L. N. Sowards, C. R. McCoy* and *S. H. & Geo. C. Sutherland,* for the defendant in error.

Campbell, J., delivered the opinion of the court.

This is an action by notice of motion brought by plaintiff in error, hereafter called plaintiff, against W. N. McFall, trading as the Clintwood Drug Company, hereafter called

defendant, to recover the sum of $331.57 alleged to be due the plaintiff by reason of his alleged purchase from Brenard Manufacturing Company of six negotiable notes executed by defendant and payable to said company. The sole basis of recovery alleged in the notice of motion is that plaintiff was "a holder in due course."

The defendant, in his grounds of defense, relied upon the following: The notes were secured by fraud; plaintiff knew of and was chargeable with the fraud practiced by the company; the notes sued on constituted a part of the contract for the purchase of radio sets and were fraudulently detached from the contract; two of the notes had been materially altered, subsequent to the execution thereof, which fact plaintiff was cognizant of; plaintiff was not a holder of the notes in due course; there was a failure of consideration.

A jury trial was had which resulted in a verdict for the defendant.

The material facts are as follows: On the 23rd day of September, 1927, O. N. Allen, a salesman for Brenard Manufacturing Company, secured from defendant a written contract for the purchase of two radio sets, together with the exclusive right to distribute and sell the radios of the company in the town of Clintwood. Separated by a perforated line from the main body of the contract were six negotiable notes forming, as contended by defendant, a part of the contract sale. These notes were upon printed forms, payable to the company at Iowa City, Iowa, and aggregated the sum of $288.33. The contract is printed upon yellow paper, in fine type, and contains a provision that if the sales of radio sets do not amount to $288.33, then the company agrees to pay the difference in cash, or re-purchase the goods. While it is true that the question has not been raised by the pleadings, it is apparent from an inspection of the printed copy that the contract filed

is printed in smaller type than required by the provisions of section 5562-a of the Code 1924. Upon the arrival of the radio sets defendant inspected one of the sets, found, as he testified, not a complete set, refused to accept the shipment and immediately returned same. In the meantime the notes had been detached from the contract and negotiated to the plaintiff at an alleged discount of nineteen per cent. Upon the trial of the case, the notes were produced and two of them showed material alterations, to-wit, the printed form reading "one month after date" had been changed in ink to read "seven months after date," and the printed form reading "two months after date" had been changed in ink to read "eight months after date."

It is contended by plaintiff that over his objection the court permitted defendant to amend his grounds of defense by alleging alterations of the notes and then refused a continuance of the case in order to afford plaintiff an opportunity to show that the notes had been altered by and with the consent of the defendant. If such an amendment was made, the record fails to disclose it. An examination of the original grounds of defense shows that the defense based upon alteration of the notes was relied upon before trial. If the court did what is now complained of, the record fails to disclose it and we cannot now consider this assignment of error.

In support of the allegation of the notice that plaintiff was a holder in due course, the deposition of plaintiff was introduced. This deposition discloses that plaintiff is a practicing attorney; that he deals extensively in negotiable paper; that at the time of the purchase of the notes involved he purchased a "batch" of other notes from the company; that he knew at the time of the alleged purchase of the notes that they were attached to a contract; that he did not avail himself of an opportunity to examine the contract; that the notes were delivered to the collecting bank (not

by plaintiff, but by the Brenard Company); that when payment was refused they were turned over to the attorney of the company for collection; that the company, under his agreement of purchase, was to bear the expense of any litigation; that in the event the notes were not collected plaintiff looked to the company to reimburse him.

Upon the conclusion of the evidence of plaintiff, defendant introduced a stipulation of counsel that plaintiff was the same person who was plaintiff in *Stevens* v. *Venema* in the Supreme Court of Michigan, reported in 202 Mich. 232, 168 N. W., page 531; L. R. A. 1918F, page 1145; and also plaintiff in the case of *Stevens* v. *Pearson*, 138 Minn. 72, 163 N. W. 769.

Testifying in his own behalf, defendant stated that he contracted for the purchase of radio sets at the price of $225.00. His account of the transaction is as follows:

"A. Cont'd. * * and I went back to get the stamp to stamp the notes and sign down under that and I said I guess I had better read this contract, and he said no I am in a hurry, and he said it is just like I represent it, and his first contract was the contract read here for $225.00, and when they come they had them billed at $283.00, and they sent a letter and I read the contract and I saw it was not as represented, and I turned their goods back and wrote them a letter and my attorney let it go.

"Q. Tell the court and jury whether the Brenard Company sent you radio sets?

"A. No, sir; just a box to put some tubes in; later I bought some radios from the Virginia Hardware Co.; they just sent me the boxes; they didn't ship me any leading in wires, ground wires, A battery, B battery, C battery or loud speakers."

Upon the conclusion of the evidence the court, of its own motion, gave this instruction:

"The court tells the jury that if they believe from a preponderance of the evidence that the plaintiff took the

notes, sued on in this case, from the Brenard Manufacturing Company, with the understanding and agreement that the plaintiff would permit suit to be instituted and prosecuted in his name for the collection of said note; that the plaintiff was not to prosecute or be at any expense in the prosecution of said suit, but was merely to permit his name to be used, with the further agreement between himself and said manufacturing company that the attorney of the said manufacturing company should prosecute said suit and be paid for his services by said manufacturing company, and that if the plaintiff should be defeated in the suit, to be prosecuted for the collection of the said notes, said manufacturing company would pay all cost incident to the prosecution and would refund to the plaintiff the amount he paid said manufacturing company for said notes and that plaintiff permitted his name to be used under the conditions mentioned, for the purpose of assuming the attitude of an innocent purchaser in due course, then the plaintiff is not an innocent purchaser in due course and the defendant may plead any defense in this suit that he might have plead if the suit had been instituted and prosecuted in the name of the said manufacturing company."

This action of the court is assigned as error.

The law is well settled in this jurisdiction that when, in the trial of an action upon a negotiable note, the note is regular upon its face, the presumption is that the holder thereof acquired it before maturity for value and without notice of any infirmity in the paper. The law is also well settled determining the status and relative rights of a holder of negotiable paper and the maker or indorser thereof.

In *Piedmont Bank* v. *Hatcher*, 94 Va. 231, 26 S. E. 505, 506, we read: "Although the general rule is that the holder of a negotiable note, regular upon its face, is presumed to have acquired it before maturity for value and without notice of any infirmity in the paper, yet if the maker or

party primarily liable for its payment, or any party bound by the original consideration, proves that it was obtained by fraud or illegality in its inception, or if the circumstances raise a strong suspicion of fraud or illegality, the burden of proof is shifted, and the holder of the note must show that he acquired it *bona fide* for value in the usual course of business while current, and under circumstances which create no presumption that he knew of the facts which impeach its validity. 1 Daniel on Neg. Inst. section 815; *Vathir* v. *Zane*, 6 Gratt. (47 Va.) 246; *Wilson* v. *Lazier*, 11 Gratt. (52 Va.) 477; *Duerson's Adm'r.* v. *Alsop*, 27 Gratt. (68 Va.) at pages 248–9."

■ When fraud in the procurement of the written contract is pleaded, parol evidence tending to prove the fraud is admissible. *White° Sewing Machine Co.* v. *Gilmore Fur. Co.*, 128 Va. 630, 105 S. E. 134; *Farmer's Man. Co.* v. *Woodworth*, 109 Va. 596, 64 S. E. 986.

■ Let us now proceed to a consideration of what we conceive to be the decisive question in the case, viz: Was the plaintiff a purchaser in good faith for value without notice? The question must be answered in the negative. Without discussing the suspicious circumstances of the detachment of the several notes from the original contract, the proof clearly demonstrates that plaintiff was cognizant of the general provisions of the contract. He admits that he was aware of the fact that the notes were originally a part of the contract of sale. A casual inspection of the notes was sufficient to put him upon notice that two of the notes had been altered. By his own admission he did not stand to lose a penny by the transaction. It was a clear case of "heads I win, tails you lose."

■ Under the express provisions of the uniform negotiable instrument act (Code 1919, section 5614), a holder in due course must not only be a purchaser for value, he must be a purchaser in good faith. It is impossible to

read the record without concluding that the purported sale by the company to plaintiff was a mere makeshift, conceived for the purpose of over-riding the defenses relied upon in the numerous cases in which Stevens has assumed the attitude of plaintiff.

▮ Notwithstanding the provision "notes to be detached by the Brenard Manufacturing Company," printed not in the body of the contract but upon the side thereof, our view is that the notes and contract constituted but one instrument and imposed upon the purchaser of the notes, possessed of the general knowledge of such contracts of sale, the duty of investigation. In the contract appears the provision:

"If my sales under this agreement do not amount to $288.33 you agree to either pay me the difference in cash or re-purchase the goods purchased hereunder if returned to you in good order, and you are to send your bond in the sum of $288.33 to protect me in the condition of this agreement."

Had the investigation been made, that provision would have put the proposed purchaser on notice that the contract was a conditional one, and, thus forewarned, he could assume no higher position than the company could assume.

We think the language employed in *Knowlton* v. *Schultz*, 6 N. D. 417, 71 N. W. 550, 552, is peculiarly applicable to the facts of the case at bar. There we read: "It may be true in this case that the plaintiff bought before maturity, for value and without notice of any defense; and yet he may not be a purchaser in good faith. He may, when he bought, have had knowledge of facts which excited in his mind such suspicions as to the paper that he feared to make an investigation, lest it would disclose a defense, and therefore he carefully shut his eyes and bought in the dark. In such a case he would not be a purchaser in good faith."

We are of opinion that the instruction given by the trial court is without error.

In view of the conclusion that plaintiff was not a purchaser in good faith, it becomes unnecessary to discuss the several assignments of error.

The judgment of the court below must be affirmed.

*Affirmed.*