# Frederick K. White, et al.

## v.

# Robert L. Gilliam, III

Record No. 911503

June 5, 1992

Present: All the Justices

R. R. Ryder for appellants.
Derrick E. Rosser (Anne-Marie Shaia Condlin; Spinella, Owings & Shaia, on brief), for appellee.

JUSTICE LACY delivered the opinion of the Court.

In this appeal, Frederick K. and Iona Z. White (the Whites) seek reversal of the trial court's judgment that Robert L. Gilliam, III, was a holder in due course of three promissory notes executed by the Whites in favor of Westhampton Mortgage Company (Westhampton).

Between November 3, 1988 and February 6, 1989, Gilliam loaned Westhampton a total of $345,200. As security for these loans, Westhampton, by its president Sommerville Wickham, assigned Gilliam three deed of trust notes that were apparently executed by the Whites. When the Whites refused to pay the notes, Gilliam filed a motion for judgment. The Whites filed their grounds of defense alleging that they did not execute the notes and, therefore, were not liable. After a series of hearings, the trial court, sitting without a jury, held that the Whites had executed the notes and that Gilliam was a holder in due course. The court entered judgment in favor of Gilliam.[1] We awarded the Whites an appeal.

As the trial court noted in its opinion letter, Sommerville Wickham had engaged in a number of illegal acts which deprived many unsuspecting people of their money. He has been prosecuted and convicted for these actions. The issue in this case, however, is whether Gilliam qualifies as a holder in due course of the three notes which Sommerville Wickham, on behalf of Westhampton, assigned to him for value.

---

[1] The court awarded judgment against the Whites on two of the notes but not against Mrs. White on a third note because the evidence showed that she had not signed it.

First, the Whites maintain that the notes were procured through fraud and, under Code § 8.3-305(2)(c), even a holder in due course is subject to this defense. The Whites claim that they "were tricked into thinking they were signing a disclosure statement. When they discovered the fraud, the documents were supposedly discarded. Therefore, they had no further reason or opportunity to act." However, the trial court rejected this claim, finding that the Whites "admitted they had signed negotiable notes in blank."

■ We will not disturb this finding of fact unless it is plainly wrong or without evidence to support it. *Bailes* v. *Sours*, 231 Va. 96, 100, 340 S.E.2d 824, 827 (1986). The record shows that the Whites are experienced borrowers. Mr. White testified that he owns approximately 30 parcels of property and is familiar with the purchase of property and the financing documents involved in that process. He stated that he had borrowed money from Westhampton at least four or five times in the past. The record reflects that, when negotiating the loan, "[t]he paper would come through so fast," that White did not read the documents he was signing. Similarly, Mrs. White testified that she had been involved with real estate transactions for 15 to 17 years, that she is familiar with the process and documents surrounding the financing of property purchases, and that she had borrowed money from Westhampton on previous occasions. Although both Mr. and Mrs. White denied that they signed blank deeds of trust, a rebuttal witness testified that the Whites had signed notes in blank on occasion. One such note was admitted as evidence. The record also contains a bill of complaint filed by the Whites in another action in which they state that they "executed blank deeds of trust and blank deed of trust notes for the defendant Westhampton Mortgage." This record clearly supports the finding of the trial judge that the Whites did sign negotiable instruments in blank.

Next, we consider the Whites' argument that the relationship between Gilliam and Westhampton was so close that Gilliam should be denied holder in due course status, even if the notes were signed in blank, under the doctrine of "close relationship." This Court has never recognized such a doctrine except in the circumstances where the relationship and actions surrounding the transactions belied the good faith purchase of the instruments. *See Whaley Bros.* v. *Stevens*, 159 Va. 388, 165 S.E. 645 (1932); *Stevens* v. *Clintwood Drug Co.*, 155 Va. 353, 360, 154 S.E. 515, 518 (1930) (purchaser, who took notes without contract and was assured of payment by transferee if

debtor did not pay, was on notice that notes were altered). We will consider the Whites' arguments regarding "close relationship" in relation to whether Gilliam purchased the notes in good faith. Code § 8.3-302(1)(b).

■ The Uniform Commercial Code, §§ 8.1-100, *et seq.*, defines "good faith" as "honesty in fact in the conduct or transaction concerned." § 8.1-2-1(19). In applying this definition we have said that:

> [g]ood faith does not encompass a concept of negligence; the test is a subjective one. An act is deemed to be done in good faith, within the meaning of the UCC, if it is done honestly . . . . Under this test, good faith is determined by looking to the mind of the particular holder who asserts that he is a holder in due course . . . .

*Lawton* v. *Walker*, 231 Va. 247, 251, 343 S.E.2d 335, 337-38 (1986).

■ The Whites rely on Gilliam's ownership interest in and regular dealings with Westhampton, and Westhampton's sizeable indebtedness to him, along with his taking the notes with full recourse and without contemporaneous receipt of the supporting deeds of trust, as proof of a relationship which negates holder in due course status. However, a mere business relationship is not a badge of fraud which denies one the status of holder in due course. *Mann* v. *Osborne*, 153 Va. 190, 198, 149 S.E. 537, 539 (1929). Gilliam's relationship with Westhampton was not one of control or complicity. He owned but two and one-half percent of the outstanding shares of preferred stock and was one of 15 investors. We do not infer nefarious motives from the fact that an investor seeks to protect his interests by loaning sums to the debtor enterprise. Furthermore, Gilliam testified that he was unaware of any irregularities or problems with Westhampton at the time he received the Whites' deed of trust notes in November 1988 and February 1989. He testified that it was not until December 1989, when he discovered that Westhampton had released some of the deeds of trust for which he held the notes, that he was alerted to possible irregularities in Westhampton's method of doing business.

Neither were the notes which Gilliam received of such nature or in such a form as to put him on notice that something about them might defeat his status as holder in due course. Gilliam testified

that, in the course of his business dealings with Westhampton, delay in providing a deed of trust with a deed of trust note was not unusual.[2] In this case, there is no evidence of record that supports a finding that Gilliam took the notes in bad faith.

Finally, we reject the Whites' argument that the trial court erred in failing to apply principles of collateral estoppel to deny Gilliam holder in due course status based on a January 1991 lawsuit in which Westhampton was held to be Gilliam's agent. The Whites were neither parties, nor privies to parties, in the previous litigation. *See Hampton Roads San. Dist.* v. *City of Va. Beach*, 240 Va. 209, 396 S.E.2d 656 (1990). Furthermore, the holding that Westhampton was an agent of Gilliam in the 1991 case is unrelated to the issues in this case. There, the maker of a note paid the note in full to Westhampton. Westhampton failed to pay Gilliam, the holder of the note at the time. The trial court held that Gilliam had expressly authorized Westhampton to collect payments on the notes; that Westhampton was Gilliam's agent for purposes of collecting the amounts due on the notes; and, therefore, that the maker of the note was not liable to Gilliam. The trial judge correctly refused to apply the doctrine of collateral estoppel based on the prior litigation.

Finding no error below, we will affirm the judgment of the trial court.

*Affirmed.*

---

[2] The Whites' claim that the notes were usurious on their face is raised here for the first time. Consequently, Gilliam has not been given the opportunity to offer evidence in defense and the trial court has had no opportunity to consider the matter. Applying our rule under these circumstances, we will not consider the matter for the first time on appeal. Rule 5:25.