# Richmond.

MELISSA R. PUCKETT, ET AL. v. CHARLES H. DRAPER, RECEIVER.

March 19, 1931.

Present, Campbell, Epes, Hudgins, Gregory and Browning, JJ.

The opinion states the case.

*B. T. Wilson* and *Burns & Griffith,* for the appellants.

*Bird & Lively* and *French, Easley & Easley,* for the appellee.

BROWNING, J., delivered the opinion of the court.

This case involves an appeal from a decree of the Circuit Court of Russell county, Virginia, entered on the 24th day of November, 1928. The bill filed by the plaintiff in the said court, who is the appellee here, was predicated upon an alleged indebtedness amounting to $7,900.00 and interest, which was represented by two notes executed on the 12th day of September, 1921, one of which was the note of E. F. Mays for $5,000.00, payable to and endorsed by J. T. Puckett, and the other was the note of Margaret Puckett for $5,000.00, which was payable to and endorsed by J. T. Puckett, and on the same day both notes were discounted by the First National Bank of Matoaka, West Virginia. These notes were renewed from

time to time until December 31, 1924, when the said E. F. Mays executed a renewal note for $4,800.00, and the said Margaret Puckett, who had intermarried with the said E. F. Mays, executed a renewal note for the same amount, both of which were endorsed by the said J. T. Puckett. There were no further renewals of said notes, but the sum of $850.00 was subsequently paid on each note, leaving the said sum of $7,900.00 due thereon with accrued interest. No further or additional payments were made on the said notes.

The said J. T. Puckett owned a large and valuable farm in Russell county containing some 1,680 acres. Some years prior to the institution of the suit upon the said notes, he left Virginia and went to the State of Florida and there engaged in the buying and selling of real estate at the time of the Florida boom, with varying fortunes. It is in evidence that he made a million dollars and lost a million dollars. While the evidence on this point does not permit of accuracy of statement, he probably suffered much more on the profit side of the ledger.

From time to time he returned to Virginia to look after his interests. On one of such occasions, on the 29th day of June, 1923, he and his wife, Melissa R. Puckett, conveyed the said Virginia farm to one Andrew L. Todd, trustee, in trust to secure the payment of the sum of $84,000.00 to the New York Life Insurance Company. Doubtless this loan was made for the purpose of his Florida speculations.

On the 13th day of September, 1926, he and his wife conveyed the said farm to one S. B. Quillen, trustee, in trust to secure three notes aggregating the sum of $31,200.00, which notes were alleged to have been due at the time of the said suit to J. A. Pruner, J. H. A. Smith and the First National Bank of Lebanon, Virginia. The said notes were all signed by J. T. Puckett, and made payable to his order, and endorsed by him. These parties and their trustee, and the said New

York Life Insurance Company and its trustee, were, among others, made parties defendant to the said bill.

On the 14th day of September, 1926, the said J. T. Puckett and his wife, Melissa R. Puckett, conveyed the said Virginia farm to Hattice C. Puckett, Nettie B. Puckett, Virginia Puckett and Melissa R. Puckett. This deed recited a consideration of ten dollars and other valuable considerations, and was made subject to the aforesaid mortgages or deeds of trust, with the recital that the grantees assumed and agreed to pay them. The grantees, however, did not execute the said deed, except the said Melissa R. Puckett, who executed the same as the wife of J. T. Puckett.

On the first day of March, 1927, the plaintiff, the appellee here, filed his bill and instituted his suit for the purpose of setting aside the said deed as a fraudulent and voluntary conveyance.

It was alleged therein that the grantees in said deed were the three daughters and the wife of J. T. Puckett; that the consideration named in the deed was simulated and did not, in fact, exist; that the grantees knew at the time of the execution and delivery of the deed that it was voluntary; that they accepted the same with the knowledge that it had been made for the purpose of hindering, delaying and defrauding the creditors of J. T. Puckett.

It was also alleged in the said bill that the First National Bank of Matoaka, West Virginia, had failed, and that Charles H. Draper had been duly appointed its receiver by the Comptroller of the Currency of the United States of America, and that all of its assets had passed into the hands of the receiver, among which were the two notes sued on.

The bill prayed that the said deed be avoided, set aside and declared as voluntary and fraudulent, so far as the plaintiff's rights or interests were concerned, and that the said farm be sold to satisfy the debts asserted by the plaintiff.

The deed of trust creditors filed their answers to the bill setting forth the indebtedness due to them, and asking that any action of the court be made subject to their rights. The grantees in the deed of September 14, 1926, viz, the three daughters and Melissa R. Puckett, the wife of J. T. Puckett, answered and denied the truth of the charges made in the bill, that the said deed was executed without consideration deemed valuable in law and with intent to hinder, delay and defraud the creditors of J. T. Puckett and that the same was voluntary and without consideration, and affirmed that it was upon full, complete and adequate consideration and that they were innocent purchasers for value, and that part of the consideration grew out of the fact that the said Melissa R. Puckett was the owner, in her own right, of valuable real estate in Russell county, which had been encumbered in a large sum, which was collected and used by the said J. T. Puckett for his own benefit and which had not been restored to her, and that the assumption of the payment of each of the mortgages constituted a part of the consideration for the said deed. And the following paragraphs appear in the said answer which relate to the question of consideration: "Your said respondents would further aver that the value of the consideration so paid by them, the indebtedness of the said J. T. Puckett so assumed, and the value of the estate and property released, all of which constitute the consideration for the said mentioned conveyance shown in said exhibit "A" filed with the bill, aggregate a sum far in excess of the actual value of the land so conveyed to them.

"Your said respondents would further aver that large amounts of the consideration paid by your said respondents as and for the said mentioned conveyance to them, along with the vested and contingent rights released in properties, the value of which are in excess of said lands so conveyed to them, have long since passed to and for the use of the said J. T. Puckett, and beyond the control of the said J. T. Puckett and

beyond the control of the court, and could not be restored to these said respondents.

"Your said respondents would further aver that upon the releasing of their said respective rights, the payment of valuable considerations to and for the use and benefit of the said J. T. Puckett, and the execution of the said mentioned deed of conveyance, they took complete control and possession of the said lands mentioned in conveyance, and have made certain payments on the indebtedness of the said J. T. Puckett so assumed by them, and have *bona fide* permitted their positions to be altered and changed to such an extent that they could not be restored to the rights and position they occupied before they parted with the said consideration."

J. T. Puckett answered the said bill and set up the same defenses as were contained in the joint answer of the four grantees in the deed, and the same denials as to the consideration and fraudulent intent, etc., with the additional defense to the claim of the plaintiff as to the indebtedness due by reason of the notes which were a part of the assets of the First National Bank of Matoaka, West Virginia, alleging that he was an accommodation endorser of the same and that the proceeds of the said notes were to be used to purchase and pay for $10,000.00 in par value of stock in the Matoaka Grocery Company, a West Virginia corporation, and that the said bank agreed to require the said stock to be duly assigned as collateral security for the payment of the said notes and that it would hold the said stock for that purpose, and that the said bank had not complied with its promise and undertaking as to the said stock in any respect and that he had suffered loss or damage, to the value of said stock, which the said bank had failed to have assigned to it for the said purpose of security, or had released the same without his knowledge or consent.

Many witnesses were called and examined and their depositions taken, which constitute a voluminous record, but the

issues that are here necessary to be determined may be reduced to a proposition that, under the Virginia authorities, can be readily and reasonably disposed of.

The trial court, on November 24; 1928, entered its final decree, giving judgment for the plaintiff for the amount claimed in the bill, with costs, and setting aside the deed of settlement as voluntary and fraudulent as to the debt asserted by the plaintiff and ordering the farm, in the deed of settlement mentioned, sold, subject to the unpaid balance of the two mortgage or deed of trust debts, unless within thirty days from the rendition of the decree the said J. T. Puckett should pay to the plaintiff the amount decreed to him. From this decree an appeal was allowed by this court and thus the case is before us.

As to the claim of J. T. Puckett that the West Virginia bank, through its agents and officers, or any of them, entered into the agreement which is detailed in his answer relating to the Matoaka Grocery Company stock, the evidence in the case is convincingly against his contention.

The officer of the bank who was alleged by Puckett to have consummated this agreement and six of the directors of the bank testified that the notes were discounted solely on the strength of Puckett's endorsement and that they never at any time heard a suggestion that the grocery stock was to be held as collateral security for these notes. The application for the loans was considered for a period of some weeks until the directors and discount committee could ascertain the financial standing of J. T. Puckett, and after hearing from two Virginia banks and Ex-Governor H. C. Stuart as to the financial standing of Puckett, they passed favorably upon the application. In this connection we may say that Margaret Puckett, who executed one of the notes, was a daughter of J. T. Puckett, and she subsequently married E. F. Mays.

J. T. Puckett was called by the plaintiff as an adverse witness under section 6214 of the Virginia Code. His testimony

as to his financial condition at the time of the conveyance to his wife and daughters of the Virginia farm, and indeed at any time, was very unsatisfactory. He was lamentably without definite and accurate information as to what he owned or what he owed. But it was apparent that he was heavily and inextricably involved.

In his testimony, not fairly elicited, we think, by questions, but by his voluntary statements, we become for the first time acquainted with his claim that he had promised his wife $50,000.00 for the release of her contingent right of dower in the Virginia farm, by uniting with him in the $31,200.00 deed of trust and for the release of her dower in certain Florida real estate. As to the Florida real estate we are enveloped in uncertainty for the reason that neither Mr. Puckett nor his son could give an accurate and definite statement of the properties owned, or the encumbrances thereon. We do get, however, the information that very valuable portions of the Florida lands were owned jointly by the father and son and dealt with as though they were partnership properties. If the lands were partnership properties, and were in Virginia, the wife would have no dower rights therein. What the law is in Florida as to this matter, we are not advised. The most valuable of the Florida properties was conveyed to the son of J. T. Puckett, and it was repossessed by Puckett's vendor for the amount of the encumbrance which was put upon it at the time of its purchase by Puckett.

We shall not undertake to treat and dispose of all of the points made by counsel for either of the contendants in the case in judgment because we do not consider it necessary to do so. The ones we shall advert to quite effectually determine the case. The defendants, appellants here, make by their brief a strong contention that the release by the wife of her dower rights in the husband's lands constitutes a valuable consideration for the post-nuptial settlement by him. This is buttressed by a formidable array of Virginia cases as authority

for their position. We do not controvert the principle as an abstract statement of law.

There is another proposition of law that is quite as firmly established and engrafted upon our jurisprudence, which is as stated by Judge Carr in the case of *Blow* v. *Maynard*, 2 Leigh (29 Va.) 29: "Every voluntary post-nuptial settlement, where the settler is indebted, is, as against his creditors, fraudulent and void; and every settlement will be taken as voluntary, unless those claiming under it can show that it was made for a valuable consideration."

Again it is said, at page 47 of 2 Leigh (29 Va.): "But though these settlements will be supported, where they appear to have been made upon a fair contract for a valuable consideration, and in the execution of such a contract; yet, from the relative situation of the parties, and the convenient cover they afford a debtor to protect his property and impose upon the world, they are always watched with considerable jealousy. The weight of authority goes to say that a post-nuptial settlement will be good against subsequent creditors, even where there is *no* consideration, *provided the settler is not indebted when he makes it, and the transaction is free from circumstances of fraud.*

"But, where the debtor is greatly indebted, and harassed by his creditors, the very fact of his making a settlement, excites strong suspicion; and to support it, an adequate consideration must be shown, together with the absence of those other badges, which generally attend a fraudulent transaction."

Affirmation of this is contained in the very strong opinion of Judge Burks in the case of *Fink, Brother & Company* v. *Denny*, 75 Va. 663, at p. 668.

In the case of *Morrisette* v. *Cook & Bernheimer Co.*, 122 Va. 588, at p. 592, 95 S. E. 449, 450, it is said:

"When post-nuptial settlements are assailed by creditors, they must be upheld by proof; and that the answer of the wife is not evidence, but must be sustained by proper proof."

On page 593 of the same case (95 S. E. 449, 450) it was said: "If in this case, when the deed was attacked * * *, the grantee had by her answer undertaken to sustain the deed by alleging that she had paid full value for the property conveyed, then by an unbroken line of decisions it is clear that the burden would have been upon her to establish that fact."

In the case of *Mann* v. *Osborne*, 153 Va. 190, 149 S. E. 537, 541, it was said: "The general rule is where husband is insolvent, transactions between husband and wife are viewed with suspicion, and the burden is upon them to satisfactorily explain the transactions."

We will now advert to some of the cases cited by the appellants to sustain their contention as to the fact that the wife's relinquishment of her dower rights in her husband's lands will furnish a valid consideration for a post-nuptial settlement, and we do so for the purpose of showing that in each one of the cases there was ample proof of the *bona fide* agreement between the husband and wife, and that the transactions between them were above suspicion.

*Eschner* v. *Eschner*, 146 Va. 417, 131 S. E. 800. This was a divorce suit. No question of the rights of creditors entered into it. Neither was there any doubt of the fact of the wife's agreement to relinquish all her rights in her husband's property upon the condition that he would make certain specific provisions for her.

*William and Mary College* v. *Powell*, 12 Gratt. (53 Va.) 372. The opinion begins with this statement:

"The settlement of Thomas J. Powell upon his wife on the first of January, 1839, having been made when he was heavily indebted to the appellants, and, as it would seem, insolvent, being of his whole estate except perhaps his interest in the King William land, which was already encumbered beyond its value by the deed of trust of 1836, and being upon a consideration not at all adequate in value to the property settled, must be held fraudulent and void as to creditors, except so far

as it may be sustained for the purpose of rendering to the estate of Mrs. Powell a just equivalent for any interests which she may have surrendered on faith of it. We are therefore to inquire what were the interests, if any, so surrendered, and whether to the extent of those interests the settlement can be held good."

The deed of settlement in this case contained the recital that the Mrs. Powell, the wife, owned a tract of land in King William county and that she had agreed that it might be sold by her husband, and that she would join in the conveyance thereof, on the condition that he would settle to her separate use property equivalent thereto. She carried out her agreement and he undertook to carry out his. This court declared the deed void as to the appellants, creditors, except to the extent of the value of the interests surrendered by the wife, as to which there was no question of the proof. The court, at page 384 of 12 Gratt. (53 Va.), said:

"But the recitals in a post-nuptial settlement as to the consideration, though admissible as against a person claiming under the settler, are not evidence against a creditor by whom the fairness and the validity of the deed is assailed. Nor are declarations of the wife at the time of executing the deed, or at other times, that it was executed in consideration of a promise of the husband to make a settlement upon her, or because he had made such a settlement, sufficient evidence of a contract to support such a settlement, if made, even to the extent of a reasonable compensation for a right of dower relinquished by her." *Blow* v. *Maynard,* 2 Leigh (29 Va.) 29; *Lewis* v. *Caperton,* 8 Gratt. (49 Va.) 148.

It will be observed that the above case is authority for the proposition that the relinquishment of dower by the wife in the lands of her husband, constitutes a valid consideration for a post-nuptial settlement, not in excess of the value of the dower so relinquished; it is also authority for the proposition

that the good faith of the transaction must be proven by clear and satisfactory evidence.

The case of *Ashworth* v. *Brown,* 111 Va. 356, 69 S. E. 362, was very different from the case in judgment. Its syllabus makes this plain: "Where a wife united with her husband in the sale and conveyance of her fee simple lands upon the express condition at the time that he will convey to her other real estate of equal value, and he subsequently does so, this is a sufficient consideration for the conveyance to the wife, and it is good against subsequent creditors of the husband."

*Keagy* v. *Trout,* 85 Va. 390, 7 S. E. 329; *Savings Bank* v. *Todd,* 114 Va. 708, 77 S. E. 446. In both of these cases the recitals contained in the deeds of settlement expressed the agreement between the husbands and wives. In each case here the husband did remunerate and indemnify the wife to the extent of her dower interest in the tracts of land conveyed by the trust deeds in which the wife united.

It is manifest that the case in judgment presents quite a different state of facts from those presented in the above cases. No such recitals are found in the deed of settlement between Mrs. Puckett and her husband; and satisfactory proof of defendant's contention is lacking.

The case of *Millheiser* v. *McKinley,* 98 Va. 207, 35 S. E. 446, did not involve the questions to be determined in the case in judgment. In so far as it is at all pertinent there was ample evidence of the validity of the consideration upon which the deed attacked was based.

In *Ficklin* v. *Rixey,* 89 Va. 832, 17 S. E. 325, 37 Am. St. Rep. 891, the deed of settlement upon the wife appears to have been based upon her relinquishment of her dower in the residue of her husband's lands and this was stated therein. The settler settled only a portion of his lands upon his wife, 270 acres, leaving 545 acres for his creditors. Thus the facts in the above case bear little similitude to those in the case in judgment.

■ The cases quoted abundantly show that in Virginia the release of dower constitutes a valuable consideration for a post-nuptial settlement, but they also clearly establish the fact that the burden is upon those claiming the benefits of such settlement to show by clear and satisfactory evidence its existence.

This the appellants, defendants in the trial court, we think have not done.

■ The deed relied upon in the case at bar contains no reference to the relinquishment by Mrs. Puckett of her dower rights, nor do those recitals give us any information that the deed constituted a post-nuptial settlement; the answers of the grantees and that of the grantor are almost as barren as to such information, and the only evidence is that of the grantor himself, volunteered while he was on the witness stand, called as an adverse witness for the plaintiff.

Even if the writings referred to had contained such recitals they would not have furnished that character of proof that the weight of authority requires when the post-nuptial settlement is assailed by creditors.

It is quite significant that none of the grantees in the deed testified in the case.

And this brings us to a consideration of the question of the presumption as to the failure of parties in interest to testify.

■ "When a defendant can by his own testimony throw light upon matters at issue necessary to his defense and peculiarly within his own knowledge, if the facts exist, and fails to go upon the witness stand, the presumption is raised, and will be given effect to, that the facts do not exist." *Copperthite* v. *Loudon National Bank,* 111 Va. 70, at p. 75, 68 S. E. 392, 394.

*Bastrop State Bank* v. *Levy,* 106 La. 586, 31 So. 164, 165; *Aragon Coffee Co.* v. *Rogers,* 105 Va. 51, 52 S. E. 843, 846, 8 Ann. Cas. 623. In the latter case it is said: "It seems to us that there is a stronger presumption to be raised against a

party in whose possession the facts *must be,* if they exist, by which suspicion would be removed and all question as to the propriety of his conduct be set at rest, who stolidly refuses, without the suggestion of a reason, to aid the court in arriving at the truth." (Italics supplied.)

In Wigmore on Evidence, Vol. 1, sec. 285, it is said: "The non-production of evidence that would naturally have been produced by an honest and, therefore, fearless claimant, presents the inference that its tenor is unfavorable to the party's cause."

In *Brown* v. *Schock,* 77 Pa. 471, it is said: "A man of ordinary intelligence must know that his failing to appear, when he had a strong motive to appear, would be evidence against him; if he relies upon his ability to disprove the motive imputed, he takes the risk, but he leaves the effect of his conduct, as a matter of evidence for the other side, to go to the jury."

In *Bastrop State Bank* v. *Levy, supra,* the court said: "Judicial tribunals are established to administer justice between litigants, and the first and most important step to that end is the ascertainment of the truth of the controversies which come before them. It is only when the truth is ascertained that the law can be properly applied in the just settlement of disputes. Litigants owe the duty of assisting in every legitimate way in the elucidation of the truth. When a defendant can by his own testimony throw light upon matters at issue, necessary to his defense and peculiarly within his own knowledge if the facts exist, and fails to go upon the witness stand, the presumption is raised, and will be given effect to, that the facts do not exist."

The above cases and others are cited with approval by this court in the case of *Aragon Coffee Company* v. *Rogers, supra.*

The deed of Puckett and his wife to Mrs. Puckett and his three daughters, executed on the 14th day of September, 1926, and the deed of trust from Puckett and his wife to

S. B. Quillen, trustee, to secure the three notes aggregating the sum of $31,200.00 were very nearly cotemporaneous, so that in the language of this court in the case of *Ashworth* v. *Brown, supra:* "It may be reasonably presumed that the two deeds are parts of the same transaction. The court will so presume, and will look upon the relinquishment as the consideration which produced the settlement." This is the only circumstance in the case that might seem to justify this court in holding that Mrs. Puckett relinquished her dower rights in the said Virginia farm to the extent of the interest she parted with in joining in the $31,200.00 trust deed in consideration of the deed of conveyance to herself and the three Puckett daughters.

This alone, we think, is not sufficient in the absence of any proof, other than that of Puckett, the grantor, that there was an agreement between himself and Mrs. Puckett that if she would release her dower rights he would make the settlement upon her.

There is another transaction in the immediate case which casts the shadow of suspicion upon Mr. J. T. Puckett's whole connection with the matter. It is to be found in the testimony of T. A. Gilmer, active president of the First National Bank of Lebanon, Lebanon, Virginia, which is as follows:

"Q. Do you know about the time when a deed was made from J. T. Puckett to his wife and daughters, or certain of his daughters, conveying to them a tract of about 1,690 acres of land in Russell county which is the conveyance in controversy in this case?

"A. Yes.

"Q. Along about the time that this conveyance was made from J. T. Puckett to his wife and daughters I will ask you to state whether or not he came to you with a proposition relative to certain stocks belonging to him, and if so, please state about when this was with reference to the time this deed was made and what his proposal to you was."

To the admissibility of this question objection was made but no point of it appears to have been made in the trial court, so, of course, no further notice will be taken of it here.

"A. Well, he brought some stocks and bonds to me, my recollection was about the same time, I recollect to have them transferred to me, and turning the proceeds over to him. As to this being his own stuff, I could not say whether it was his or his wife's, but took it to be his transaction. * * *

"Q. Then, what was to be done by you with reference to this stock or bonds or property under his proposal?

"A. I would send it to one of the Alderson boys. They were to have the stock transferred to me and I was to collect it and deliver the proceeds.

"Q. And I believe you stated you were to deliver the proceeds to J. T. Puckett. Is that correct?

"A. My recollection was that it was for his benefit and I was to deliver the funds to him, or to his wife, I don't recollect just exactly, and I did not want to do it, of course, it was for him.

"Q. How did you get your understanding as to what was to be done with it?

"A. He presented the papers and talked it over with me.

"Q. By he, whom do you mean?

"A. Mr. J. T. Puckett.

"Q. What was the amount of this stock or bonds or the approximate amount, if you remember?

"A. Well, it run up several thousand dollars. It could have been $5,000.00 or more, my recollection is. I think it was more.

"Q. Did you do this?

"A. No.

"Q. Why?

"A. I did not like the looks of the proposition and did not want to do it.

"Q. What was Mr. Puckett's financial condition at that time, if you know?

"A. Well, it was considerably questioned."

Another witness, Mr. E. A. Leonard, testified that he handled this stock proposition for Mr. Puckett through the intermediation of Mr. Giles Dickerson, of Lebanon, Virginia, the latter bearing a message from Mr. Puckett that he desired Leonard to hold 103½ shares of stock of a Title and Bonding Company of Tampa, Florida, as collateral for money he (Puckett) owed his wife. The corporation transferred the stock to witness who afterward turned the same over to Puckett in person. The witness said that Dickerson stated to him that owing to Puckett's financial reverses it would not look well to transfer the stock direct to Mrs. Puckett at that time. Mr. Leonard, however, had no personal interest in the matter.

It is unnecessary to make further comment upon this testimony.

It will be recalled that the plaintiff's counsel called J. T. Puckett as an adverse witness and during his examination he volunteered a statement which detailed the alleged indebtedness to his wife and the circumstances of the post-nuptial settlement. This statement was, in its incipiency, not responsive to the question asked him by counsel.

Appellants' counsel contend that thus plaintiff made Puckett its own witness and proved the agreement and settlement by him and the burden then shifted from the Pucketts to the plaintiff to disprove such agreement and settlement. To this we cannot give assent. To permit such an artifice to supply proof, which the Pucketts utterly failed to adduce, would defeat the ends of justice.

It is clear to us that the trial court was right in avoiding and setting aside the alleged deed of settlement as to the plaintiff's, appellee's, claim, but we think there is no merit in the contention that the wife is not dowable in the excess of

the value of the land after the payment of the deed of trust or mortgage debts in which the wife united with the husband.

Accordingly, we affirm the decree of the trial court in all respects, except that the sale of the land shall be made subject to Mrs. Puckett's contingent right of dower in the equity of J. T. Puckett in the payment of such as well as subject to prior liens. And the case is remanded to the trial court for further proceedings in harmony with this opinion.

*Affirmed and supplemented and remanded.*