[Civ. No. 11789. First Dist., Div. One. June 2, 1942.]

R. H. BRELAND et al., Respondents, v. TRAYLOR ENGINEERING AND MANUFACTURING CO. (a Corporation), Appellant.

MILLIE BRELAND, a Minor etc., Respondent, v. TRAYLOR ENGINEERING AND MANUFACTURING CO. (a Corporation), Appellant.

RUTH BRELAND, a Minor etc., Respondent, v. TRAYLOR ENGINEERING AND MANUFACTURING CO. (a Corporation), Appellant.

Louis Oneal, Maurice J. Rankin and Duncan Oneal for Appellant.

Frank V. Campbell and Campbell, Rankin & Hayes for Respondents.

PETERS, P. J.—Plaintiffs brought three actions against defendants for damages resulting from injuries sustained by plaintiffs in an automobile accident which occurred sometime between 7:30 and 8 o'clock in the morning of November 23, 1939. The plaintiffs R. H. Breland and Anna R. Breland, husband and wife, brought one action, while the other two actions were brought by the minor children of the Brelands, Ruth and Millie. In all complaints the named defendants were the Traylor Engineering and Manufacturing Co., sole appellant; Consolidated Steel Company of Los Angeles, later dismissed by stipulation; Clara Hoffman, owner of one of the

cars involved in the collision, who was served as a nonresident owner of a car operated in this state, and against whom a default judgment was entered; and William G. Bachman, in whose favor judgment was rendered. Bachman filed a cross-complaint against R. H. Breland. These four actions were consolidated for trial, and tried without a jury. Judgment was entered in favor of Breland on Bachman's cross-complaint, and that portion of the judgment has become final. Judgment was also entered against Traylor Engineering and Manufacturing Co., and against the defaulting defendant Clara Hoffman awarding R. H. Breland $5,428.50, Anna R. Breland $500, Millie Breland $4,015.81, and Ruth Breland $278.94. From this judgment Traylor Engineering and Manufacturing Co. has appealed.

Appellant company maintains its place of business at Allentown, Pennsylvania. It sold to Permanente Corporation, for installation at the latter's plant located near Monte Vista in Santa Clara County, California, and which is about ten miles from San Jose, a large rotary kiln. As part of its contract with Permanente Corporation appellant company sent two of its employees, Chapman and defendant Bachman, to California to assist in the installation of the kiln. Bachman, who did not appear as a witness at the time of trial but whose deposition was taken by plaintiffs prior to trial, testified in his deposition that it was his duty to supervise the alignment of the kiln, and that Chapman was in charge of all welding. Bachman had been furnished business cards by appellant company on which, immediately under Bachman's name appeared ''Construction Superintendent, Traylor Engineering & Mfg. Co., Allentown, Pa.'' The design of the kiln, and all materials for its construction, were furnished by appellant company, but the installation of the kiln, except as noted, was performed by the Consolidated Steel Company of Los Angeles.

Appellant company allowed Chapman and Bachman their railroad fare and subsistence to California, although both men drove to California by automobile, Bachman in his own car, and Chapman in a car registered in the name of defendant Clara Hoffman, who accompanied him on the trip. Bachman came to California first, arriving early in September, 1939. Chapman arrived about two weeks later, after Bachman had notified appellant company that he was needed. Both men had been employed by appellant company for many years, and had frequently worked together in supervising erection

of kilns sold by appellant company. Bachman testified that after arriving at San Jose the appellant company, in addition to salary, paid all of his living expenses and allowed five cents a mile for transportation to and from the Permanente plant. He "assumed" the same arrangement had been made with Chapman. Upon Chapman's arrival the two men first used Bachman's car to drive to the Permanente plant, but later shifted to the Hoffman car driven by Chapman. Thereafter, the two men commuted to the factory in the Hoffman car, driven by Chapman. It is a reasonable inference from Bachman's testimony that Chapman was paid five cents a mile by appellant company for furnishing such transportation, and that the company knew the men were using an automobile for this purpose. In addition to monthly salaries both men received all their living expenses from appellant company.

The job upon which these men were working was a "rush" job and frequently required them to work on Sundays and holidays. On November 23, 1939, which was Thanksgiving Day, Chapman picked Bachman up at his hotel and started toward the Permanente plant. There is no doubt, and Bachman so testified, that the men were on their way to work. At the intersection of Stevens Creek Road with Bascom Avenue the automobile driven by Chapman, a Studebaker sedan, collided with the car in which the plaintiffs were driving, a Ford sedan driven by plaintiff R. H. Breland. The accident resulted in the death of Chapman, serious injuries to R. H. Breland, and Millie Breland, and minor injures to Anna Breland, Ruth Breland and Bachman.

So far as pertinent here, the trial court found that Chapman and Bachman were employees of appellant company; that at the time of the accident Chapman was driving the car within the course and scope of his employment with appellant company; that Chapman was negligent; that his negligence proximately caused the accident; that Bachman was not negligent; and that plaintiffs were not guilty of contributory negligence. Based on these findings, the judgment above set forth was entered.

Appellant urges that the findings that Chapman was guilty of negligence are not supported. This point is urged although appellant concedes that the findings are supported by certain inferences from the evidence. Since this is so, this court has no power to disturb the finding. (*Crawford* v.

*Southern Pacific Co.,* 3 Cal. (2d) 427 [45 P. (2d) 183].)

■  Appellant also urges that the evidence, as a matter of law, establishes that R. H. Breland was guilty of contributory negligence, and that the findings to the contrary are unsupported. In this connection, appellant seems to have overlooked the rule that in order to establish the defense of contributory negligence as against a verdict of the jury or finding of the trial court, "the evidence must be such that the appellate court can say that there is no substantial conflict on the facts, and that from the facts reasonable men can draw but one inference, which inference points unerringly to the negligence of the plaintiff proximately contributing to his own injury." (*Crawford* v. *Southern Pacific Co., supra,* p. 429.) If this well-settled rule be kept in mind, there is no doubt that the findings in reference to negligence and contributory negligence are supported.

■  As already noted, the accident occurred at the intersection of Bascom Avenue, which runs north and south, and Stevens Creek Road, which runs east and west. The Breland car was traveling northerly on Bascom Avenue, while the car driven by Chapman was traveling westerly on Stevens Creek Road. As Breland approached the intersection, for the last one hundred feet or so, there was nothing to obstruct his view, either to his right or left. As Chapman approached the intersection there was nothing to obstruct his view to the left, from which direction respondents were approaching, but his view to the right was obstructed, so that the intersection, as to him, was a blind intersection. The two cars came together near the center of the intersection, both of them being badly smashed, the Ford so badly that it was sold for junk.

R. H. Breland testified that, prior to approaching the intersection, he was driving about forty miles per hour; that as he approached he slowed down to about thirty, and that he continued to slow down until he reached the intersection; that he was then going about twenty-five miles per hour; that as he approached he was looking ahead; that he was "looking everywhere"; that when he was about sixty or sixty-five feet from the intersection he saw the Chapman car coming from his right; that at that time the Chapman car was "over twice the distance" from the intersection that he was; that he did not keep his eyes on that car; that he saw another car going in or coming out of a service station slightly to his left; that

as he pulled into the intersection he looked to his left and then to his right; that he then saw the Chapman car "so close to me with the terrific speed, that I tried to give myself a left turn, and by that time the car was upon me, and 'Boom!'" Mrs. Breland testified that she saw the Chapman car as they approached the intersection, but that she did not continue to look at it "because the car was so far away that I just dismissed it from my mind."

Officer Bohnett of the State Highway Patrol arrived at the scene of the accident shortly after its occurrence. He testified that in the Chapman car were some blue prints, a large plumb bob, a level, and a satchel of small tools; that there was no evidence on the highway that brakes had been applied by either driver prior to the collision; that tire burns on the highway led from the point of collision thirty-five feet to a telephone pole on the northwest corner and from there nine feet to the Chapman car; that the Chapman car was north of the pole and the Breland car was twelve feet west of the pole; that there were no tire burns leading to the Breland car; that the Breland car was damaged in the front and right side, while the Chapman car had been hit on the left side about the center; that the pole with which the Chapman car came into contact was set in concrete and that the Chapman car hit it with such force that it was moved three inches at the base.

From this brief resumé of the evidence it is obvious that the finding of the trial court that Chapman was negligent is amply supported. The evidence of the two Brelands, and the physical facts, demonstrate that the Chapman car must have been traveling at a very high and excessive rate of speed.

On this issue of negligence, appellant urges that the trial court erroneously admitted certain evidence of officer Bohnett and Dr. Amaral. Officer Bohnett testified that Bachman stated to him at the latter's hotel during the forenoon of the day of the accident that the Chapman car was going between thirty-five and forty miles per hour at the time of the accident. Dr. Amaral testified that Bachman stated to him at the hospital where Bachman was treated shortly after the accident that they had got started late and were going pretty fast, and that is all he knew. Appellant urges that these statements were no part of the *res gestae*, were hearsay as to it, and were inadmissible. Appellant relies on the rule that unless statements as to the cause of an accident are part

422

of the *res gestae*, employees have no power to bind their employer by such admissions unless evidence is offered that power to make such statements was within the scope of their authority. (*Kimic* v. *San Jose-Los Gatos etc. Ry. Co.*, 156 Cal. 379 [104 Pac. 986]; *Luman* v. *Golden Ancient Channel M. Co.*, 140 Cal. 700 [74 Pac. 307]; *Willard* v. *Valley Gas & Fuel Co.*, 171 Cal. 9 [151 Pac. 286].) It is not now necessary to discuss the extent or proper application of that rule. There can be no doubt, and appellant concedes, that the statements were admissible as against Bachman, who was a defendant and cross-complainant. The record indicates that as to Bohnett's testimony the trial court probably admitted the evidence merely as to Bachman. However, if it be conceded that his testimony and the testimony of Dr. Amaral on this issue was also admitted against appellant, and if it be conceded that it was error to admit such testimony against appellant, such evidence was merely cumulative of other admissible evidence on the issue of speed of the Chapman car. The physical facts speak more eloquently than the evidence of Bohnett and Dr. Amaral on this issue. After reading the record we are of the opinion that on the issue of Chapman's negligence, the question was not a close one. The evidence is quite clear that the Chapman car was traveling through a blind intersection at a high and excessive rate of speed. Therefore, if error was committed in the admission of the challenged testimony, it could not have been prejudicial to appellant.

The contention that the evidence shows that R. H. Breland was guilty of contributory negligence as a matter of law is equally untenable. This contention is based upon Breland's testimony that he observed the Chapman car coming from his right when he was within sixty to sixty-five feet from the intersection, and that he did not look again to his right until he entered the intersection. It seems to be the thought of appellant that Breland, as a matter of law, was required to keep a constant lookout to his right. The only case cited by appellant on this point is *Jensen* v. *Hansen*, 12 Cal. App. (2d) 678 [55 P. (2d) 1201]. In that case, in affirming a judgment in favor of the plaintiff, and in holding that an implied finding of negligence on part of defendant was supported, the court pointed out that the evidence showed plaintiff's car entered the intersection first from the right, and in commenting on the failure of defendant to keep a proper lookout, stated (p. 683): "It was his duty to keep a reason-

ably vigilant lookout for vehicles approaching the intersection from both directions.'' That sentence cannot be distorted into a holding that, as a matter of law, under all circumstances, one approaching an intersection must keep a constant lookout both ways. Where a driver sees an approaching car, whether he acted as a reasonable man in not keeping his eye on that car, is generally a question of fact for the trier of the fact. R. H. Breland testified that when he saw the Chapman car it was ''over twice the distance'' from the intersection that he was. Mrs. Breland testified the Chapman car was so far from the intersection that when she saw it she ''just dismissed it from my mind.'' Whether Breland exercised reasonable care in keeping a proper outlook, and, whether he acted as a reasonable man in not again looking at the Chapman car until he entered the intersection, were questions of fact. The finding of the trial court on this question cannot now be disturbed. (*Lundgren* v. *Converse,* 34 Cal. App. (2d) 445 [93 P. (2d) 819] ; *Lee* v. *Stephens,* 8 Cal. App. (2d) 650 [47 P. (2d)1105].)

█ Appellant strenuously urges that there is no evidence at all to support the findings that Chapman was acting within the scope of his employment at the time of the accident. In this connection appellant relies on the rule that, under normal circumstances, an employee is not within the course and scope of his employment while going to or coming from work. There are numerous cases which establish the proposition that, where a person is injured by an employee, or where the employee is injured, while going to or coming from his work, the employer is not liable either to the injured third person for damages or to the employee for compensation. (*Humphry* v. *Safeway Stores, Inc.,* 4 Cal. App. (2d) 589 [41 P. (2d) 208] ; *Postal Tel. Cable Co.* v. *Industrial Acc. Com.,* 1 Cal. (2d) 730 [37 P. (2d) 441, 96 A. L. R. 460] ; *Holopoff* v. *Industrial Acc. Com.,* 131 Cal. App. 554 [21 P. (2d) 649] ; *Nussbaum* v. *Traung Label etc. Co.,* 46 Cal. App. 561 [189 Pac. 728].)

This so-called ''going and coming rule'' is not without exceptions. It is not the law that in every case where the employee is going to or coming from work the employer is not liable for the negligence of his employee, or is not liable to his employee for compensation. This court recently had occasion to point out that there are many exceptions to the so-called ''going or coming rule.'' (*Western P. & S. Co.* v.

*Industrial Acc. Com.,* 49 Cal. App. (2d) 108 [121 P. (2d) 35].) Many exceptions to the rule are there mentioned. (See, also, *Brown* v. *Montgomery Ward & Co., Inc.,* 104 Cal. App. 679 [286 Pac. 474] ; *Dillon* v. *Prudential Ins. Co. of America,* 75 Cal. App. 266 [242 Pac. 736] ; *Crucic* v. *Nelson Display Co.,* 19 Cal. App. (2d) 46 [64 P. (2d) 1153] ; *Western Pac. R. R. Co.* v. *Industrial Acc. Com.,* 193 Cal 413 [224 Pac. 754] ; *Leffert* v. *Industrial Acc. Com.,* 219 Cal. 710 [28 P. (2d) 911] ; *Whiting-Mead Com. Co.* v. *Industrial Acc. Com.,* 178 Cal. 505 [173 Pac. 1105, 5 A. L. R. 1518] ; *Freire* v. *Matson Navigation Co.,* 19 Cal. (2d) 8 [118 P. (2d) 809] ; *Smith* v. *Industrial Acc. Com.,* 18 Cal. (2d) 843 [118 P. (2d) 6].) In the Western Pipe & Steel Company case, *supra,* a widow of an employee was held entitled to a death benefit where her husband, the employee, was killed while on his way to dinner off the premises of his employer, where the employee was required to work overtime and was paid at an hourly rate while securing his dinner. It was held that under such circumstances the commission was justified in finding that an implied contract existed whereby the employer had agreed that service should continue during the dinner hour. There are also many cases holding that where transportation is furnished as an integral part of the contract of employment to convey the employee to and from his place of work, injuries to the employee while in such vehicle are compensable as being within the course and scope of the employment. (*Dominguez* v. *Pendola,* 46 Cal. App. 220 [188 Pac. 1025] ; *Trussless Roof Co.* v. *Industrial Acc. Com.,* 119 Cal. App. 91 [6 P. (2d) 254].)

In the present case both Chapman and Bachman were employees of appellant. Bachman was ''construction superintendent'' of appellant and Chapman was in charge of all welding. Bachman testified on his deposition that both men were on a monthly salary basis; that they were on their way to work at the time of the accident; that their traveling and subsistence expenses were paid by appellant while on their way to California; that while living at San Jose and working at Permanente Corporation their living expenses were also paid by appellant. It is a reasonable inference from Bachman's testimony that appellant paid Chapman five cents a mile for using the Hoffman car to drive back and forth to and from work. It should be here mentioned that appellant failed to produce any evidence at all on the question of the relationship between itself and Chapman and Bachman. The

question thus presented is whether, under such circumstances, the findings that Chapman was acting in the course and scope of his employment at the time of the accident are supported by the evidence. We think it is a possible, although not conclusive, inference from the evidence that by the arrangement above described the appellant company impliedly agreed that while Chapman was driving to and coming from work he should be deemed to be acting within the course and scope of his employment. Where the employer pays the transportation expenses of his employees on their way to and from work it is a possible, although not conclusive, inference that the employer has impliedly agreed that service to him shall start from the time the employee leaves home and shall continue until he arrives back at his home. This is not a new concept. The problem is discussed in an annotation appearing in 87 A. L. R. 250, entitled: "Right to compensation for injury while going to or from work as affected by fact that compensation covers the time involved or cost of transportation, or both." In that annotation, after setting forth the general rule that injuries received while going to or coming from work are not compensable, it is stated: "An exception to this rule, however, is generally recognized where the employee's compensation covers the time involved in going to or from his work, or an allowance is made for the cost of transportation." Many cases are then discussed. Running through the cases is the thought that when transportation is furnished or an allowance is made by the employer for such transportation, it is a permissible inference that the employer has impliedly agreed that the employment shall be continuous from the time the employee leaves home and shall continue until he returns. (See discussion on the general principle in *Western P. & S. Co.* v. *Industrial Acc. Com., supra.*)

In the present case that inference receives added support from the fact that appellant, although it defended the action, failed to produce any evidence at all on the issue as to the nature of its agreement with Chapman and Bachman. We think the trial court was justified in giving some weight to this fact. Section 2061 of the Code of Civil Procedure provides that juries shall be instructed: "6. That evidence is to be estimated not only by its own intrinsic weight, but also according to the evidence which it is in the power of one side to produce and of the other to contradict; and, therefore, 7. That if weaker and less satisfactory evidence is

offered, when it appears that stronger and more satisfactory was within the power of the party, the evidence offered should be viewed with distrust.'' Section 1963 of the Code of Civil Procedure in listing disputable presumptions, in subdivision 5, provides: ''That evidence willfully suppressed would be adverse if produced.'' In *Dooley* v. *West American Com. Ins. Co.,* 133 Cal. App. 58, 63 [23 P. (2d) 766], the court in upholding a finding of agency stated, after reviewing the evidence, ''. . . and we are of the opinion, in view of the fact that appellant must have possessed evidence as to whether or not Vianelli was acting for it in so doing, which evidence was not produced at the trial although appellant defended the action, that such suppressed evidence would have been adverse to it had it been in fact produced.'' In *Barty* v. *Collins,* 109 Cal. App. 94, 97 [292 Pac. 979], it was urged by a principal that his agent was on vacation at the time of the accident. The fact that ''during the trial, no attempt was made by the corporation to show by their records or by the testimony of executive officials that Collins was actually on his vacation or the exact date when it began'' was commented on by the court in upholding a finding of agency. (See, also, *Puckett* v. *Draper,* 156 Va. 238 [158 S. E. 68]; *Robinson* v. *George,* 16 Cal. (2d) 238 [105 P. (2d) 914].)

The rule of these code sections and cases is predicated on common sense, and public policy. The purpose of a trial is to arrive at the true facts. A trial is not a game where one counsel safely may sit back and refuse to produce evidence where in the nature of things his client is the only source from which that evidence may be secured. A defendant is not under a duty to produce testimony adverse to himself, but if he fails to produce evidence that would naturally have been produced he must take the risk that the trier of the fact will infer, and properly so, that the evidence, had it been produced, would have been adverse. Wigmore, in his usual trenchant style, states the rule as follows: ''The nonproduction of evidence that would naturally have been produced by an honest and therefore fearless claimant permits the inference that its *tenor is unfavorable to the party's cause.''* (2 Wigmore on Evidence (3rd ed.), § 285.)

It follows, therefore, that the findings that Chapman was acting in the course and scope of his employment are supported by the evidence, and by reasonable inferences therefrom.

The last contention of appellant is that the trial

court committed prejudicial error in admitting the testimony of the witness Paslaqua. This witness was permitted to testify as to statements made to him by Bachman the day following the accident in which Bachman is alleged to have stated that appellant company paid all his and Chapman's expenses while they were away from Pennsylvania, and that the operator of the car (Chapman) was allowed five cents a mile while going to or coming from work for the use of the car. Appellant urges that these unsworn statements were hearsay as to it, and urges that such statements of an agent not part of the *res gestae* were not within the scope of Bachman's authority.

The facts in reference to the admission of this testimony are as follows: After overruling appellant's objection that such testimony should be admitted solely as to Bachman, the trial court suggested that appellant look over Paslaqua's testimony and move to strike out the objectionable parts. Later appellant moved to strike out all of Paslaqua's testimony, and in particular all conversations of the witness with Bachman. The court denied the motion stating "it might be proper at some time to renew it." The motion was not renewed. Respondents urge that appellant's failure to press its motion constituted a waiver. (*D'Avanzo* v. *Manno,* 16 Cal. App. (2d) 346 [60 P. (2d) 524].)

Whether a waiver occurred need not now be decided. It may be assumed that no waiver took place, and it also may be assumed that it was error to admit the evidence as against appellant. Such assumed error could not have been prejudicial. Everything to which Paslaqua testified had been testified to by Bachman in his deposition, or may be inferred from his testimony. The court could have made no other finding but that Bachman and Chapman were paid subsistence and transportation by appellant. The real point in the case is not whether it was proved that transportation was paid, but whether that fact, together with the circumstances mentioned, brought the acts of Chapman within the scope of his employment. The evidence of Paslaqua was merely cumulative, and even if erroneously admitted, could not have prejudiced appellant. (*Inouye* v. *McCall,* 35 Cal. App. (2d) 634 [96 P. (2d) 386]; *Fechtner* v. *Costa,* 16 Cal. App. (2d) 691 [61 P. (2d) 473].)

No prejudicial error having occurred at the trial, and the

findings being amply supported, the judgment appealed from should be, and is, affirmed.

Bray, J. pro tem., and Knight, J., concurred.

A petition for a rehearing was denied July 2, 1942. Knight, J., voted for a rehearing.